**A.B. DICK COMPANY and Gould, Inc., Plaintiffs,**

v.

**BURROUGHS CORPORATION, Defendant.**

No. 78 C 75.

United States District Court, N.D. Illinois, E.D.

Oct. 29, 1982.

On Counterclaims Nov. 5, 1982.

Dugald S. McDougall and Keith V. Rockey, McDougall, Hersh & Scott, Chicago, Ill., for plaintiffs.

L. Michael Jarvis, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

A.B. Dick Company ("A.B. Dick") sues Burroughs Corporation ("Burroughs"), claiming Burroughs' ink-jet printer infringes United States Patent No. 3,596,275 (the "Sweet patent").[1] Burroughs has now

moved for summary judgment, claiming the collateral estoppel effect of a recent District Court opinion precludes any finding of infringement here. For the reasons stated in this memorandum opinion and order, Burroughs' motion is granted.

### A.B. Dick-Mead Litigation

Shortly after this action was instituted, the same plaintiffs sued The Mead Corporation ("Mead"), claiming Mead's ink-jet printer infringed both the Sweet and Lewis-Brown patents. Mead's subsidiary in turn filed a declaratory judgment action in the Southern District of Ohio, challenging both validity and infringement. Both Mead actions were consolidated and tried before District Judge Walter Rice in Ohio. Though he upheld the Sweet patent's validity, he construed its claims narrowly and hence found no infringement by Mead. *Mead Digital Systems, Inc. v. A.B. Dick Co.,* 521 F.Supp. 164 (S.D.Ohio 1981).

Burroughs contends Judge Rice's findings as to the scope of the Sweet patent call for collateral estoppel treatment and, as a matter of law, require rejection of A.B. Dick's infringement charges. A.B. Dick disputes Burroughs on every level, forcing a careful analysis of the relevant portion of *Mead.*

### Scope of the Sweet Patent Under Mead

In deciding *Mead* Judge Rice defined the scope of the Sweet patent narrowly. He found that patent disclosed only an *oscillographic*[2] ink-jet printing device, which could directly record on paper the *waveform* produced by a continuously varying electrical signal. 521 F.Supp. at 173. He defined a waveform as "the pictorial repre-

---

1. A.B. Dick owns the Sweet patent. Initially the Complaint also charged infringement of United States Patent No. 3,298,030 (the "Lewis-Brown patent"), owned by co-plaintiff Gould, Inc. and licensed exclusively to A.B. Dick. However, the parties have stipulated to dismissal of the Lewis-Brown infringement claims with prejudice, but subject to reinstatement if Judge Rice's ruling as to invalidity of that patent, *Mead Digital Systems, Inc. v. A.B. Dick Co.,* 521 F.Supp. 164, 182–83, 185 (S.D.Ohio 1981), is reversed or vacated on appeal.

2. Judge Rice adopted the definition of "oscillograph" contained in the McGraw-Hill Encyclopedia of Science and Technology:

 A measurement device for determining waveform by recording the instantaneous values of a quantity such as voltage, as a function of time. It consists of three major components: (1) a primary detector for sensing the instantaneous values of the quantity, (2) the timing system for introducing a time scale on the record, and (3) some means for recording the waveform.

sentation of the form or shape of a wave *with respect to time*" (*id.*, emphasis added). He described the recording process of the Sweet patent in greater detail (*id.*):

The waveform is recorded, in accordance with the Sweet patent disclosures, by the imprint of uncharged and variably charged ink droplets on various positions on a paper. In every embodiment disclosed in the Sweet patent, the waveform of a continuously varying signal is recorded by a process which involves: charging each ink droplet in a succession of droplets in proportion to the instantaneous value, including zero, of an electric signal which varies as a function of time; and then passing the variably charged droplets through [a pair of constantly charged deflecting plates] to deflect the droplets through variable trajectories in order to produce on the paper a trace of the incoming waveform.[3]

There can be no doubt of the fundamental limitation of the Sweet patent adjudicated in *Mead.* As Judge Rice further found (*id.* at 175):

Sweet limited his invention to oscillography in which a picture of the incoming waveform is reproduced on paper by recording as a function of time the magnitude of deflection of each droplet in a succession so that the succession of deflected droplets traces the waveform on paper. This is the function and operation of an oscillograph.

He pointed to a like determination by the Board of Patent Interferences in a Patent Office interference proceeding between Sweet and Lewis-Brown (*id.* at 177):

Sweet's system records a cursive line representative of the voltage of an unknown, incoming waveform. A "picture" of the waveform appears on a moving strip of paper. . . . It writes a continuous line, a cursive line, the length depending upon the length of the incoming signal.

And he held file wrapper estoppel precluded A.B. Dick from construing the Sweet patent claims to claim other than an oscillographic recorder (*id.* at 184).

### Collateral Estoppel Effect of Mead's Determination of Scope

■ *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) announced the demise of "mutuality" as an invariable prerequisite for issue preclusion (more commonly "collateral estoppel"). That concept of the defensive use of collateral estoppel has since expanded far beyond its original application (*Blonder-Tongue* gave .collateral estoppel effect to a prior holding of patent invalidity against the same plaintiff).[4]

■ Now only four showings are necessary for the invocation of defensive collateral estoppel—issue preclusion—by a nonparty to the earlier action:

1. The issue must be identical to one determined in the first action.

2. That issue must have been actually litigated in the first action.

3. Resolution of the issue must have been essential to a final judgment in the first action.

4. Plaintiff must have had a full and fair opportunity to litigate the issue in the first action.

*Continental Can Co. v. Marshall,* 603 F.2d 590, 594–95 (7th Cir.1979); *Restatement of Judgments (Second)* § 29, at 291.

Burroughs contends Judge Rice's determination confining the Sweet patent to oscillographic recording should be given collateral estoppel effect. A.B. Dick counters

---

3. Each droplet's deflection (and the height of its trajectory) is a positive function of the magnitude of the charge it receives. Thus the amount of charge applied to each ink droplet— the "signal" voltage—dictates where it will land on the paper. Consequently any waveform can be reproduced on the paper simply by manipulating the electrical charges imposed on the procession of ink droplets.

4. Indeed the Supreme Court later pioneered the extension of non-mutuality to the offensive use of collateral estoppel. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

that the first three collateral estoppel criteria have not been met.

Burroughs is plainly right. *Mead*'s ruling as to the scope of the Sweet patent satisfies the first three collateral estoppel requirements (no issue is of course raised as to the "full and fair opportunity to litigate"):

1. Unquestionably the issue raised here—whether the Sweet patent is limited to oscillographic recording—is identical to an issue resolved in *Mead*. As already stated, Judge Rice expressly found (521 F.Supp. at 173) the "Sweet patent discloses only an oscillographic device." [5]

2. It is equally clear the scope of the Sweet patent was vigorously contested in *Mead*. That issue was specifically raised in the *Mead* Final Pretrial Order at 6. Extracts from the testimony of Sweet himself (521 F.Supp. at 173) confirm the issue was in fact raised during the trial. And Judge Rice rejected an A.B. Dick-tendered final order omitting a determination of scope in favor of a Mead-tendered order making such a determination. A.B. Dick's conclusory assertion that the issue was not actually litigated cannot overcome those facts.

3. *Mead*'s resolution of the issue of scope (embodied in the final judgment itself) was surely necessary to that judgment. Because that ingredient is the key to this opinion (for it is the only matter on which A.B. Dick has any arguable position at all), it merits somewhat more extended treatment in the next few paragraphs.

First, Judge Rice's declaration was directly responsive to one form of relief requested by Mead in its declaratory judgment action (which, as will be recalled, was consolidated with A.B. Dick's patent infringement suit). Mead had specifically sought a declaration as to the scope and meaning of the Sweet patent.

Second, Judge Rice's ruling on the scope of the Sweet patent claims was an integral step in his disposition of the infringement claim:

1. As already indicated, he first determined the Sweet patent teaches only an oscillographic device.

2. Next he identified two specific characteristics of an oscillographic recorder:

(a) Its nozzle can produce a continuous waveform represented by a variable signal.

(b) It cannot deflect droplets longitudinally to the direction of paper movement.

3. Finally he deduced Mead was not guilty of infringement because its printer lacked both these oscillographic attributes.

Thus Judge Rice's first ruling—as to scope—was essential to his ultimate finding of non-infringement.[6]

In sum, Judge Rice's determination that the Sweet patent is limited to oscillography satisfies all the preconditions for collateral estoppel treatment in this proceeding. It remains only to consider whether the Burroughs printer too is oscillographic.

---

5. A.B. Dick does not attempt to distinguish that determination from issues presented here. Instead it argues (Pl.Mem. 15):

Judge Rice's findings that Mead did not infringe because ink deflection was longitudinal of the relative movement between the paper and the nozzle is simply a different infringement issue than that presented by the Burroughs printer.

That contention is simply not responsive to the "identity of issue" requirement, for collateral estoppel is being applied to a determination of *scope* rather than *infringement*. Insofar as A.B. Dick's argument bears on the "necessity"

requirement, it will be disposed of later in this opinion.

6. More precisely, Judge Rice's determination of the oscillographic nature of the Sweet patent was critical to his finding the Mead printer did not infringe as a substantial equivalent of the Sweet invention. To resolve that question he obviously had to determine (1) the functions served by the Sweet patented device and (2) the manner in which those functions were carried out. 521 F.Supp. at 180–81. By construing the Sweet patent claims as limited to oscillography, Judge Rice accomplished both ends.

*Summary Judgment in Light of Mead*

1. *Description of the Burroughs Printer*

 There is no factual disagreement as to how the Burroughs equipment operates. It is designed for printing characters on checks or similar documents in the manner explained in Dr. Richard C. Fedder's affidavit.

Ink drops emerging from the nozzle are aimed at the "ink return" catcher. If no voltage is applied to the charging electrodes, the drops are intercepted by the catcher and returned to the ink supply. If a positive voltage is applied, the droplets are deflected upward toward the moving document.

Each character is printed by selectively producing ink spots at certain locations on a dot matrix having nine rows and seven columns. As it moves from one column to the next, the ink drop stream is deflected successively to the nine locations (one above the others), and one or more drops can be directed to each of those locations. Drops are deflected to the nine predetermined, equally spaced positions by applying nine predetermined, and successively higher, voltage levels to the charging electrode. Each voltage level is commonly referred to as a "step" or "stair" of the "staircase" voltage. Depending on the character desired, certain locations on the matrix will require no drops. As to those locations, the corresponding "step" of the staircase voltage is omitted, inducing the uncharged drop to land in the "ink return." Each character is represented by an input code that translates into a series of staircase voltages having the configuration necessary to print that character.

2. *Comparison of the Burroughs Printer to an Oscillographic Recorder*

Burroughs asserts its printer is not an oscillographic machine as a matter of law. Several reasons are advanced in the Fedders affidavit:

1. Burroughs ink-jet printers cannot record waveforms of unknown shape.

2. Burroughs equipment does not reproduce waveforms because "the charac-

ters that are printed do not constitute a 'picture' or 'replica' of the incoming waveform."

3. Unlike an oscillograph, the Burroughs printer produces dot-matrix images, not a cursive line.

4. Burroughs equipment is not sold or used for oscillographic purposes.

A.B. Dick does not directly claim the Burroughs equipment is an oscillographic recorder. Instead it disputes Burroughs' second argument—the printer's inability to replicate the incoming waveform. On that score A.B. Dick adverts to part of the affidavit of J. James Stone:

> In the A.B. Dick and Burroughs equipment . . . the input signal to the charge ring does represent the entire character being printed. For example, if the A.B. Dick or Burroughs equipment is set up to print the letter "R," the signal applied to the charging ring, when displayed on an oscillograph, is the letter "R." . . . Both the A.B. Dick and Burroughs equipment, like the device shown in the Sweet patent, replicate the waveform of the incoming signal as the image printed by the ink jet.

Burroughs retorts that only a misuse of an oscillograph can generate even an approximate replica of the character image represented by the staircase waveforms. Referring to Stone's letter "R" example, Burroughs explains (R.Mem. 8–9):

> Thus, if the staircase waveform of [the leftmost column in the 7 × 9 dot matrix] is applied to an oscillograph, the only way one might produce an "R", if at all, is to run the oscillograph much slower than intended, so as to compress the time scale—so that, instead of recording the steps of the waveform as intended, in staircase form, the oscillograph may show one step almost directly above another. Also, since the dwell time for the flat part of the step is much greater than the rise time between steps, these rise times may be suppressed, and not appear. . . .
>
> An analogy of this deliberate time compression, to distort the intended operation

of an oscillograph, might be to tape record a symphony and then play it back at 100 times the intended recording speed—to hear a few seconds of noise. This obviously is a misuse of the tape recorder, assuming it could even be operated at the high speed, and effectively nullifies it for its intended purpose.

What controls however in this litigation is that by no stretch of the imagination can the Burroughs printer be viewed as an oscillograph. A.B. Dick's argument, even if true (and Burroughs clearly has the better of it), does not warrant such a finding. Merely because an oscillograph could *approximately* replicate a character (via drastic compression of the time scale) does not demonstrate the converse: that the Burroughs printer is capable of performing as an oscillograph.

As stated earlier Judge Rice employed the McGraw-Hill Encyclopedia of Science and Technology definition of an oscillograph (emphasis added):

> a measurement device for determining waveform by recording the instantaneous values of a quantity such as voltage, *as a function of time.*

But the Burroughs printer cannot record voltage signals as a function of time—no matter how the time scale is calibrated. All nine voltage levels (transmitted at *different* times) in each of the seven columns in the character matrix are recorded at the *identical* position on the "time" (horizontal) axis.[7] In short, the characters printed by the Burroughs equipment (the only type of image the equipment can record) are simply not waveforms.[8]

By the *Mead* definition, then—the definition that controls for these purposes—the Burroughs printer is not an infringing oscillographic device. That conclusion is also buttressed by specific findings underlying Judge Rice's decision on the scope of the Sweet patent. In limiting the Sweet patent claims to oscillographic recording, Judge Rice specifically held they did not disclose a device capable of producing *visible* discontinuities in the waveform. 521 F.Supp. at 173–74. *Mead* confined the Sweet patent to oscillographic recording of *cursive* waveforms. *Id.* at 173–74, 175. In total contrast, even if the characters printed by the Burroughs equipment were to be labeled as waveforms, they are visibly *discontinuous* and non-cursive.

### Conclusion

*Mead* determined the Sweet patent claims disclose only an oscillographic recorder. That determination binds A.B. Dick in this action under collateral estoppel principles. Burroughs' printer is not an oscillographic recorder. Accordingly Burroughs' printer does not infringe the Sweet patent as definitively construed and limited in *Mead*.

There is thus no genuine issue of material fact, and Burroughs is entitled to a judgment as a matter of law as to the Sweet patent claims.[9] This Court will await Burroughs' advice as to its antitrust counter-

---

**7.** Theoretically this problem could be avoided if the Burroughs printer were designed to print only one ink spot in each of the matrix columns. But its ability to generate waveforms in such hypothetical circumstances would be so circumscribed it could not be fairly classified as an oscillograph. First, it could not record waveforms with amplitudes in excess of the nine "steps." Second, it could not reproduce a *continuous* waveform unless each successive voltage quantity were within a "step" of the preceding voltage signal.

**8.** Even were the Burroughs characters a species of waveforms, categorizing the Burroughs printer as an oscillograph would still be highly questionable. As Burroughs points out, an oscillograph can only *imperfectly* portray a char-

acter (since its ink jet must *always* be moving). Furthermore, to provide an adequate depiction of a character the oscillograph's time scale may have to be so compressed that its underlying purpose—to record voltage values *as a function of time*—would be defeated.

**9.** Because this decision rests wholly on *Mead,* this Court has had no occasion to construe the Sweet patent independently. *Mead* is now on appeal, though that fact does not impair its effect for collateral estoppel purposes. This Court will leave to the litigants the taking of any protective steps (as they did with the Lewis-Brown patent) to provide for the possibility *Mead* might be reversed.

claim, the only remaining viable claim in this action.

## ON COUNTERCLAIMS

At the conclusion of this Court's October 29, 1982 memorandum opinion and order (as well as during the status hearing at which the Court announced that decision granting Burroughs Corporation's motion for summary judgment), this Court invited the parties to address the Burroughs antitrust counterclaims, the only remaining viable claims in this action. Burroughs' counsel have since advised the Court of their agreement with opposing counsel under which the counterclaims may be dismissed with prejudice, subject to Burroughs' right to reinstate the counterclaims at its option if any of the patent infringement issues raised by the Complaint or Amended Complaint are reinstated at any time.

Accordingly the following final order is entered in this action:

1. A.B. Dick Company's claims of infringement of the Sweet patent by Burroughs' ink-jet printer are dismissed with prejudice, subject to reinstatement at A.B. Dick's option if Judge Rice's ruling as to the scope of the Sweet patent (*Mead Digital Systems, Inc. v. A.B. Dick Co.,* 521 F.Supp. 164 (S.D.Ohio 1981)) is reversed or vacated on appeal.

2. Burroughs' counterclaims in this action are dismissed with prejudice, subject to reinstatement at Burroughs' option if any of the issues of patent infringement asserted by A.B. Dick in this action are reinstated at any time.