A.B. DICK COMPANY, Appellant,

v.

BURROUGHS CORPORATION, Appellee.

Appeal No. 83–595.

United States Court of Appeals,
Federal Circuit.

July 27, 1983.

Dugald S. McDougall, Chicago, Ill., argued, for appellant; Keith V. Rockey, Edgar H. Schmiel and Peter S. Lucyshyn, Chicago, Ill., of counsel.

Charles W. Bradley, New York City, argued, for appellee; Steven D. Glazer, Cran-

ford, N.J., Kevin R. Peterson and Leonard C. Suchyta, Detroit, Mich., of counsel.

Before KASHIWA, MILLER and NIES, Circuit Judges.

JACK R. MILLER, Circuit Judge.

This appeal in a patent infringement suit is from the United States District Court for the Northern District of Illinois, which granted appellee Burroughs Corporation's ("Burroughs") motion for summary judgment against appellant A.B. Dick Company ("A.B. Dick") on the basis of collateral estoppel.[1] The estoppel was premised on a previously-decided infringement action brought by A.B. Dick against Mead Digital Systems, Inc. ("Mead"),[2] wherein the United States District Court for the Southern District of Ohio held that Mead did not infringe the patent that is the subject of this suit against Burroughs. We reverse and remand.

## BACKGROUND

A.B. Dick is the assignee of United States Patent No. 3,596,275 to Richard G. Sweet for "Fluid Droplet Recorder." The Sweet patent discloses a method and apparatus for applying ink drops to a sheet to form a trace. As a drop emerges from a nozzle it is given an electrostatic charge proportional to an input signal. The drop then passes a deflecting electrode having a constant elec-

trostatic charge and is deflected thereby to a degree corresponding to the charge of the drop. Thus, by varying the charge on the drop, the amount of deflection (and, consequently, the point at which the drop impacts a substrate) can be varied. The Sweet patent exemplifies an oscillographic recorder that forms a trace corresponding to the waveform of an input signal. Ink drops are deflected in a direction transverse to the direction the recording medium moves as a function of time. The claims in question do not specifically limit the invention in terms of direction of deflection or oscillographic recording.

Burroughs' accused device is an ink-jet dot-matrix alphanumeric character printer. It shapes letters or numbers of ink drops by deflecting drops upward to any of 9 vertical positions as the paper moves in a horizontal direction. Thus, the drops are deflected in a direction transverse to the direction the recording medium moves as a function of time.

In the prior infringement action, in which Mead sought a declaratory judgment against A.B. Dick, the District Court for the Southern District of Ohio (the "*Mead* court") held that Sweet patent claims 1 and 33 [3] were valid but not infringed by Mead's ink-jet "DIJIT" printer, which utilizes multiple vertically-arranged ink jets, each of which deflects ink drops only horizontally,

1. 550 F.Supp. 1065, 218 USPQ 90 (N.D.Ill. 1982).

2. *Mead Digital Systems, Inc. v. A.B. Dick Co.,* 521 F.Supp. 164, 213 USPQ 328 (S.D.Ohio 1981) (Rice, J.). Familiarity with that opinion will be presumed.

3. Claim 1 is a method claim and claim 33 is an apparatus claim. Claim 1 provides:

1. A method of making records on a record member by use of fluid droplets, comprising the steps of supplying writing fluid to a nozzle under pressure whereby a stream of writing fluid is projected toward the record member, applying cyclically varying energy at a predetermined frequency to the writing fluid to cause the stream issuing from the nozzle to break up into a succession of separate evenly spaced uniform droplets which move in free flight and initially in single file

toward the record member, causing the stream adjacent to the nozzle to pass adjacent to a charging electrode, applying variable electrical signal values representative of the desired deflections to the charging electrode whereby individual droplets are electrostatically charged to effect different charges on at least some droplets of the succession, causing the droplets thereafter to pass in proximity to a deflecting electrode, applying a potential to the deflecting electrode to produce an electrostatic deflecting field through which the droplets pass whereby charged droplets are deflected laterally, with droplets having different charges moving through different trajectories, causing relative movement between the record member and the nozzle, and causing at least some of the droplets passing through said deflecting field to be deposited on the record member to make a record thereon.

parallel to the direction of paper movement. The *Mead* court found:

> 123. Each orifice in the DIJIT printer, and, as a result, the DIJIT system as a whole, *literally infringe* claim 1 or claim 33 of the Sweet patent, *if* "lateral" deflection in claim 1 is interpreted to include deflection *longitudinal* of the relative movement between the record member and the nozzle, *or* if deflection in multiple "trajectories" to multiple "regions" in claim 33 is interpreted to include deflection in that same direction.
>
> 124. Each orifice in the DIJIT printer *does not literally infringe* claim 1 or claim 33 of the Sweet patent, *if* said claims are interpreted to describe *only* deflection transverse of the time-axis of relative movement between the record member and nozzle, and thus define only oscillography.

521 F.Supp. at 180, 213 USPQ at 340. The court held, in the final judgment, that "[t]he Sweet patent is limited in scope to oscillographic recording."[4]

In this case, Burroughs' motion for summary judgment was grounded on the collateral estoppel effect of the holding of the *Mead* court that Mead did not infringe the Sweet patent. The court below, without analysis of the claims in the Sweet patent, granted Burroughs' motion because "Burroughs' printer is not an oscillographic recorder."

## ANALYSIS

The issue before us is whether the *Mead* court's holding on the scope of the Sweet patent has collateral estoppel effect in this case.

■ As properly stated by the trial court, collateral estoppel is appropriate only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.[5]

■ Collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries'" and precludes a plaintiff "from asserting a claim that the plaintiff had previously litigated and lost against another defendant." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). At the same time, a court is not without some discretion to decide whether a particular case is appropriate for application of collateral estoppel. For example, offensive use of collateral estoppel, where a plaintiff seeks to estop a defendant from relitigating issues the *defendant* previously litigated and lost against another plaintiff, should not be allowed where it would be unfair to the defendant. *Id.* at 331, 99 S.Ct. at 651.

In the *Mead* case, the district court considered several interrelated issues, including validity, infringement, and, at the request of Mead, scope of the Sweet patent. A.B. Dick argues that the *Mead* court's broad statements regarding scope were not necessary to resolution of the validity and infringement issues before the court; that they were merely dicta and constitute an advisory opinion having no collateral estoppel effect. Burroughs argues that "scope" of the Sweet patent was a separate issue in Mead's declaratory judgment action; that A.B. Dick unsuccessfully argued lack of jurisdiction to decide that issue before the Mead court; and that the court's decision on the jurisdictional issue also has collateral estoppel effect.

■ It is elementary that the property right bestowed by a patent is measured, in the first instance, by the claims. *Aro Manufacturing Co. v. Convertible Top Replace-*

---

4. Implicit in Burroughs' argument on appeal is the assumption that this statement refers to the scope of the claims and not merely to the scope of disclosure of utility.

5. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), eliminated the requirement of mutuality of estoppel in patent infringement suits involving patent claims previously held invalid in other litigation, and the parties are agreed that mutuality is not an issue in this case.

*ment Co.,* 365 U.S. 336, 339, 81 S.Ct. 599, 600, 5 L.Ed.2d 592 (1961); *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950). The *Mead* court, in resolving the infringement question, looked to the language of claims 1 and 33 in the Sweet patent. First, it determined that the limitation in claim 1 that the droplets are "deflected laterally" was ambiguous, because "it may mean deflection 'lateral' of the undisturbed stream of droplets emitting from the nozzle ... *or* it may only mean deflection 'lateral' of the relative movement between the nozzle and the paper," and that claim 33 was "ambiguous in the same manner as claim 1." 521 F.Supp. at 174, 213 USPQ at 335. Second, it determined that the Mead DIJIT printer literally infringed claim 1 only if "lateral" deflection included deflection longitudinal of the relative movement between the record member and the nozzle and that it literally infringed claim 33 only if the "trajectories" given different drops included deflection in the same direction. *Id.* at 180, 213 USPQ at 340. The *Mead* court held, on the basis of claim interpretation, that the DIJIT printer did not infringe because it did not deflect droplets transversely of the relative direction of movement between the paper and the nozzle.

By contrast, application by the court below of collateral estoppel to the question of whether the accused Burroughs machine infringes claims 1, 3, 4, 10–13, 15, 16, 18, 24–26, and 30–33 of the Sweet patent was anomalous. Despite the fact that the Burroughs printer, *unlike* the DIJIT printer, *does* deflect droplets transversely of the relative direction of movement between the paper and the nozzle, the court did not compare the several claims in issue to the accused device. Instead, using the *Mead* court's statement that the Sweet patent "is limited in scope to oscillographic recording" rather than focusing on the claims of the Sweet patent, it determined, on affidavits submitted by the parties: "By no stretch of the imagination can the Burroughs printer be viewed as an oscillograph."

Although we express no opinion on whether there is infringement in this case, we note that the claims in issue, if infringed, would only read on a *portion* of the Burroughs machine. Thus, the Burroughs machine includes additional elements not required by the claims, such as means to generate a signal as a step function representative of various alphanumeric characters.

It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. *See Temco Electric Motor Co. v. Apco Manufacturing Co.,* 275 U.S. 319, 328, 48 S.Ct. 170, 173, 72 L.Ed. 298 (1928). For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write. Neither would infringement be negated simply because the patentee failed to contemplate use of the pencil in that environment. In the instant case, however, the presence in the Burroughs machine of elements not specified in the Sweet patent claims, such as the input signal source, and the absence in the Burroughs machine of elements not present in the Sweet patent claims (although relied on by the court as included in the claims), such as cursive trace and rate of relative movement between the nozzle and the record member, caused the court to hold that there was no infringement. Ironically, the court relied on the collateral estoppel effect of a decision of another court which held that a different machine did not infringe because it lacked a characteristic (transverse deflection) unquestionably found in the Burroughs machine. We conclude that such an application of the doctrine of collateral estoppel to the question of infringement was erroneous.

In *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 206 USPQ 577 (5th Cir.1980), the Fifth Circuit considered the applicability of collateral estoppel to questions of infringement. In previous litigation over the patent claims in question, the court determined that a process for

polymerizing butadiene did not infringe the patent. In so holding, the court stated that the patent was limited to the polymerization of *ethylene*. When faced with the question of whether that judicial statement estopped the same plaintiff from asserting (against a different defendant) that a process for polymerizing *propylene* infringed, the court said:

> We acknowledge that language in [*Ziegler v.*] *Phillips* [*Petroleum Co.,* 483 F.2d 858 (5th Cir.1973)] states that the '332 patent is limited to the polymerization of ethylene. That language, however, is not necessary to the determination of the issue in *Phillips*. Only our holding that the patent was not intended to encompass the formation of high-cispolybutadiene is necessary.

> Because our statements limiting the patent to the polymerization of ethylene are not necessary and essential to the result in *Phillips,* they may not be used as a basis for estoppel in the present case.

*Id.* at 1332–33, 206 USPQ at 593. We are in agreement with this reasoning. Except in the context of validity or infringement, judicial statements regarding the scope of patent claims are hypothetical insofar as they purport to resolve the question of whether prior art or products not before the court would, respectively, anticipate or infringe the patent claims. Regardless of whether the *Mead* court had jurisdiction to rule on the abstract scope of patent claims, we are persuaded that it would be unfair to give such a ruling collateral estoppel effect. *Cf. Parklane Hosiery Co. v. Shore,* 439 U.S. at 331, 99 S.Ct. at 651 (offensive use of collateral estoppel not appropriate where it would be unfair to the defendant).

■ In view of the foregoing, we hold that judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement; further, that such statements should be narrowly construed. Burroughs argues that the *Mead* court's hold-

ing on scope "was an integral step in the judgment of noninfringement." We agree that the *Mead* court found it necessary to consider the Sweet patent's disclosure of the claimed invention functioning as an oscillographic recorder to resolve perceived ambiguities in claims 1 and 33. The court concluded, as a result of that consideration, that those claims required deflection of ink droplets transversely of the direction of relative movement between the nozzle and the record member. It is only that conclusion that was essential to the final judgment of noninfringement. Accordingly, we do not apply collateral estoppel to the court's broader statements with respect to the scope of the patent.

In view of the foregoing, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

NIES, Circuit Judge, concurring in result.

I agree with A.B. Dick that the trial court misconstrued Judge Rice's ruling in the *Mead* case and that the grant of summary judgment based on giving collateral estoppel effect to that erroneous interpretation was improper. Hence, I join in the majority's decision to reverse. On this ground alone the appeal is resolved. I do not agree that we must also decide "whether the *Mead* court's holding on the Sweet patent has collateral estoppel effect in this case." Such an analysis would be necessary only if we agreed that Judge Rice had made the broad ruling urged by Burroughs.

I

Judge Shadur translated Judge Rice's holding that "the Sweet patent is limited in scope to oscillographic record*ing*" to mean that only devices which were "oscillographic record*ers*" could infringe. That was error. Judge Rice made a number of specific findings which shows that he did not intend to rule on what type of device was an infringement.

Finding of fact No. 124, quoted by the majority, stated unequivocally that it is

"deflection transverse of the time-axis of relative movement between the record member and nozzle" that "define[s] ... oscillography." Finding of fact No. 143 states: "Sweet's patent claims invention of means for practicing one of the number of devices for the purpose of oscillographic recording." 521 F.Supp. at 182, 213 USPQ at 342. When the expression "oscillographic recording" as used by Judge Rice is read in the context of his entire opinion, I understand that he used the term as a summary description of a method of recording a wave form by "deflection of ink droplets transversely of the deflection of relative movement between the nozzle and the record member."

In view of the trial court's error in construing "oscillographic recording" to mean specific devices rather than a particular mode of operation, the grant of summary judgment is clearly unsupportable.*

## II

Whether collateral estoppel effect is to be given to the limited holding as to the mode of operation of appellee's invention is not an issue between the parties. Indeed, A.B. Dick concedes that so long as Judge Rice's opinion stands, its claims are so limited, and the Burroughs' device admittedly involves deflection transverse of the relative movement between the nozzle and the record member. Whether A.B. Dick can assert no broader scope to their claims because of general principles of collateral estoppel is irrelevant.

## III

Finally, as with collateral estoppel, the discussion of adding elements to avoid infringement is a non-issue. The trial court concluded only that the Burroughs device was not an oscillographic recorder. The error below resides in the court's failing to consider that the accused device may operate by oscillographic recording, not in some confusion over what is accused of infringe-

ment. To answer the contention not raised, the majority erects a hypothesis and then strikes it down with an assumption that the result is patently correct. I do not know that the conclusion is correct and am content to await the day when the issue is raised.

---

* I also note that there is a problem, not addressed by the trial court, in giving collateral estoppel effect against independent claims 4, 10, 11, 13, 24, 25, and 30 which were not before the *Mead* court.