# BERNARD DALSIN MANUFACTURING COMPANY Plaintiff–Appellant,

v.

## RMR PRODUCTS, INC., Defendant–Appellee.

No. 00–1308.

United States Court of Appeals, Federal Circuit.

May 7, 2001.

Before LOURIE, RADER, and DYK, Circuit Judges.

DYK, Circuit Judge.

Bernard Dalsin Manufacturing Company ("Dalsin") appeals from the decision of the United States District Court for the District of Minnesota granting the motion of RMR Products, Inc. ("RMR") for summary judgment of non-infringement of U.S. Patent No. 4,554,863 (the "'863 patent"). *Bernard Dalsin Mfg. Co. v. RMR Prods., Inc.,* No. 98–CV–1149 (D.Minn. Sept. 14, 1999) (*"Dalsin "*). We find that the district court erred in its infringement analysis, and that under a proper claim construction there remains a genuine issue of material fact concerning infringement. Therefore we *reverse* the grant of summary judgment of non-infringement, and *remand* to the district court for further proceedings.

## BACKGROUND

Dalsin is the assignee of the '863 patent, which relates to a chimney damper attach-

able to the top of a chimney flue. The patent addresses the shortcomings of traditional dampers installed near the base of the flue which often do not adequately seal the air passageway, thereby allowing cold air to enter the dwelling even when the damper is in the closed position. '863 patent, col. 1, II. 20–23. The patent also addresses numerous shortcomings of dampers designed to be installed at the top of the flue, for example, that they are often heavy, expensive, and particularly subject to mechanical failure. *Id.* at II. 24–39.

The chimney damper described in the '863 patent is attachable to the top of the chimney flue and includes a frame that is mountable to the open periphery of the chimney flue and has a superior portion extending above the flue opening. *Id.* at II. 42–48. A spring extends between a flue cover that seals the flue opening and the superior portion of the frame, and a control mechanism is used to open and close the flue cover. *Id.* at II. 51–55.

Figures 1 and 8 of the '863 patent illustrate a preferred embodiment as follows:

As illustrated in the embodiment shown in Figures 1 and 8, the chimney damper 20 is mounted to the top portion of a flue 16 of a chimney 15. *Id.* at col. 2, II. 39–41. The chimney damper includes a frame 22 with a superior portion 22.1 extending above the flue opening. *Id.* at II. 46–50. The chimney damper also includes a flue cover in the form of a damper plate 21. *Id.* at II. 53–58. An extension spring 24 extends from the superior portion 22.1 of the frame 22 to suspend the damper plate 21 above the flue opening when the chimney damper is in the open position shown in Figures 1 and 8. The damper plate 21 is connected to a vertically movable stem 33, and the stem is operatively linked by a cable 35 to a control device (not shown) remotely mounted within the fireplace

opening. *Id.,* col. 3, II. 10–14. By operating the control device, the damper plate 21 may be pulled downward from the open position shown in Figures 1 and 8 to a closed position so that the damper plate engages the top surface of the flue, thereby sealing the inside of the chimney flue from the exit or entrance of air or particles. *Id.* at II. 14–21.

In the embodiment shown in Figures 1 and 8, the stem 33 is guided in the vertical direction by a fixed stem guide 34 supported in the center of the flue opening by rods 30 and 31 and tubes 32. '863 patent, col. 4, II. 51–58. The rods and tubes are secured to the flue 16 by means of mounting brackets 23. In the embodiment shown in Figures 1 and 8, mounting screws 39 secure the mounting bracket 23

against the wall of the flue 16. The frame 22 is also mounted to the mounting brackets 23.

The '863 patent contains seven claims. Independent claim 1, the only claim at issue in this appeal, reads as follows:

1. A chimney damper attachable to a chimney flue having an upwardly facing, generally planar peripheral surface defining an upwardly open flue opening, comprising:

(a) a frame mountable to the open periphery of a chimney flue and having a superior portion oriented to extend above said flue opening;

(b) flue cover means comprising a thin, generally rectangular metal plate having a generally planar peripheral portion to seal against the upwardly facing surface of a flue opening;

(c) *mounting means for mounting the flue cover means to the chimney flue;*

(d) spring means extending between the flue cover means and the superior portion of the frame for spring biasing the flue cover means upwardly away from the flue opening, the flue cover means serving to protect the spring means from heated gases emanating from the flue opening; and

(e) control means for urging the flue cover means downwardly, in opposition to the spring means, into sealing contact with a flue opening, the control means including lock means for maintaining the flue cover in its sealing position.

*Id.* at col. 6, I. 52 to col. 7, I. 7 (emphasis added).

Dalsin sued RMR, asserting that RMR had infringed claim 1 of the '863 patent by making, using, and selling an "Icebreaker" chimney damper and a "Universal" chimney damper. On February 24, 1999, RMR filed motions for summary judgment on the issues of non-infringement, invalidity, and damages. On September 14, 1999, the district court granted RMR's motion for summary judgment of non-infringement, but denied the motions for summary judgment related to invalidity and damages as moot in light of its grant of the non-infringement motion. *Dalsin,* slip op. at 2.

In its order, the district court agreed that "the Icebreaker and Universal are similar to the chimney damper in the patent and obviously serve the same general purpose. Indeed, RMR's products contain some features that are virtually identical to the elements of the patented product." *Id.,* slip op. at 17. In finding non-infringement, the district court construed claim 1, particularly focusing on the "mounting means for mounting the flue cover means to the chimney flue." The district court agreed with the parties that the "mounting means" limitation was a means-plus-function limitation under 35 U.S.C. § 112, paragraph 6. *Id.,* slip op. at 13. The district court then found, contrary to Dalsin's assertion, that the "mounting means" comprises more than just the structure necessary to mount the mounting brackets to the chimney flue, *i.e.,* the "screws, rivets, bolts, glue, or silicone" described in the specification. *Id.,* slip op. at 15. Instead, the district court included the entire structure that it thought was necessary to mount the flue cover to the chimney flue. The district court noted: "The mounting means therefore comprises some set of components equivalent to the screws, springs, brackets, rods, and stem guide apparatus described in the specification which together serve the function of mounting the *flue cover means* to the inside of the chimney flue." *Id.* (emphasis added).

The district court then performed the second step of the infringement analysis

and held that the Icebreaker and Universal dampers do not literally infringe because they do not have the mounting means set forth in the patent. The district court stated that: "Specifically, the Icebreaker's flange, the center locator, and the s.s. cable, are not means for mounting the alleged flue cover means (the damper plate) to the inside of the flue. Similarly, the Universal's cross-bar, upper portion of the s.s. cable, and chimney cap anchor do not mount the damper plate to the flue." *Id.,* slip op. at 16. The court also held that the Icebreaker and Universal dampers do not infringe under the "doctrine of equivalents," meaning apparently that the accused devices did not have structures equivalent to the "mounting means" structure found in the specification because, *inter alia,* "the screws and silicon that attach these cap-damper products to the flue are substantially different and serve an entirely different function than the mounting means in the patent." *Id.* The district court therefore granted RMR's motion for summary judgment of non-infringement. On March 14, 2000, the district court entered final judgment on the infringement claim as authorized by Fed. R.Civ.P. 54(b) and stayed further proceedings on the remaining claims pending final disposition on appeal. Dalsin then appealed to this court.

## DISCUSSION

### I. *Jurisdiction and Standard of Review*

■ We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1) (1994). We review a district court's grant of a motion for summary judgment without deference. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed. Cir.1998).

■ A patent infringement analysis requires two steps. *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476, 45 USPQ2d 1498, 1500 (Fed.Cir.1998). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.* (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir. 1993)). Claim construction is a matter of law that is reviewed *de novo. Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998).

### II. *Claim Construction and Infringement*

The primary issues in this appeal concern the "mounting means for mounting the flue cover means to the chimney flue" limitation of claim 1. The parties do not dispute that the "mounting means" limitation is a means-plus-function limitation invoking 35 U.S.C. § 112, paragraph 6. We agree.

■ Section 112, paragraph 6 states that a means-plus-function claim "shall be construed to cover the corresponding structure, materials, or acts described in the specification and equivalents thereof." The determination of the corresponding structure of a means-plus-function claim is a determination of the meaning of the "means" term, and is a matter of claim construction. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.,* Inc., 145 F.3d 1303, 1308, 46 USPQ2d 1752, 1756 (Fed.Cir.1998). Dalsin urges that the district court improperly construed the

"mounting means" limitation.[1]

■ The first question is: what is the corresponding structure described in the specification for the mounting means? The district court correctly defined the "flue cover means" to be the damper plate. Although in general the district court appears to have correctly identified the structure corresponding to the "mounting means," in order to avoid any possible confusion we set forth below the proper construction.

In determining the structure corresponding to the mounting means we must first determine what structure described in the specification performs the mounting means function. The specification describes a variety of structure that could arguably perform a mounting means function, including the frame which is attached to the mounting brackets, and the spring. The specification, while not a model of clarity, focuses on the stem guide, stem, screws, and mounting brackets as the structure which mounts the flue cover means, i.e., the damper plate, to the chimney flue. See, e.g., '863 patent, col. 4, II. 49–65. Dalsin argues that the mounting means of the '863 patent cannot include the stem and stem guide. This argument is not persuasive.

We reject also Dalsin's assertion that the mounting means is directed toward mounting the *frame* to the flue, instead of the flue cover to the flue. Claim 1 expressly recites "mounting means for mounting the *flue cover means* to the chimney flue." Dalsin urges that "the only structure necessary to mount the flue cover means to the chimney flue is that structure which mounts the frame to the chimney flue." This argument is unpersuasive because the stem, stem guide, mounting brackets, and mechanism for attaching the mounting brackets to the chimney flue, i.e., mounting screws, all of which are described in the specification, comprise the structure necessary for performing the function of mounting the flue cover, i.e., the damper plate, to the chimney flue. The frame and the structure necessary to attach the frame itself to the mounting brackets and flue are not part of this "mounting means."

We turn then to the comparison of the claim to the accused devices. The district court found that there was "no dispute of material fact as to whether the Icebreaker or Universal literally infringe element (c) [the mounting means limitation]," meaning apparently that they do not have identical structure to that shown in the specification. *Dalsin*, slip op. at 15. This remains undisputed. However, the district court also found that the Icebreaker and Universal do not have equivalent structures because "Dalsin has offered no evidence from which a finder of fact could reasonably conclude that the Icebreaker and Universal have components that serve substantially the same function as the mounting

---

1. As we have stated repeatedly, the question of equivalents infringement under § 112, paragraph six, is generally a question of literal infringement though the standards applied are similar to doctrine of equivalents infringement. See Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1364, 54 USPQ2d 1308, 1315–16 (Fed.Cir.2000) (noting that "section 112, paragraph 6 equivalents must perform the identical function of the disclosed structure while equivalents under the doctrine of equivalents need only perform a substantially similar function" and that "[b]ecause the 'way' and 'result' prongs are the same under both the section 112, paragraph 6 and doctrine of equivalents tests, a structure failing the section 112, paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s)") (internal citations omitted); IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1435–36, 54 USPQ2d 1129, 1138–39 (Fed.Cir.2000); Chiuminatta, 145 F.3d at 1310–11, 46 USPQ2d at 1757–58.

means in the patent, perform the function in substantially the same way as the mounting means, or will achieve substantially the same results as the mounting means." *Id.*, slip op. at 16.

We agree with the appellant that the district court erred, and we find RMR's arguments in support of the district court's conclusions to be unpersuasive.

■ RMR makes several arguments in support of its claim of non-infringement. First RMR says that its devices do not contain "mounting means" at all because these devices do not perform the function of mounting the damper plate to the chimney flue. This is so because there is intervening structure positioned between the damper plate and the top of the chimney flue in the accused devices, *i.e.*, the interior ledge around the bottom opening of each of the Icebreaker and Universal dampers, against which the damper plate rests when it is in the closed position. In both the Icebreaker and Universal devices, the damper plate does not directly contact the top of the chimney flue when it is in its closed position. RMR asserts that because the damper plate is not *directly* mounted to the chimney flue in either of the accused products, a finding of infringement is precluded. However, it is well-established that the presence of additional structure, such as the intervening structure, in the accused device will not exclude a finding of infringement, *SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1336, 51 USPQ2d 1811, 1816–17 (Fed.Cir.1999); *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703, 218 USPQ 965, 967–68 (Fed.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984), and there is no requirement in the claim here that such additional structure be absent.

■ Second, RMR argues that the mechanism for attaching the damper plate to the flue in the accused product is substantially different from the structure used in the '863 patent. Specifically RMR urges that its use of glue in the Universal and Icebreaker dampeners is substantially different from the patented chimney damper which the specification shows attached by a plurality of mounting screws. This argument similarly must fail. The claims cover equivalents to the mounting screws as well as the mounting screws themselves. A genuine issue of material fact exists as to whether a reasonable juror could conclude that the use of glue is equivalent to the use of screws.

■ Third, RMR argues that the accused damper devices do not contain separate mounting brackets and therefore do not have the mounting means structure disclosed in the specification. The relevant question however is whether the accused devices effectively incorporate the mounting brackets disclosed in the specification or equivalents thereof. Again, the issue of equivalent structure is a question of fact, resolution of which is inappropriate here on summary judgment because there are disputed issues of fact.

■ Fourth, RMR argues that the cable, crossbar, and holes in the crossbar for the cable in the Icebreaker are not equivalent structure to the stem and stem guide described in the patent specification. The Icebreaker device includes a metal guide crossbar with two guide holes which serves as a guide for a cable loop attached to the damper plate. The two guide holes are spaced apart on the guide bar in order to prevent the damper plate from twisting when the cable is pulled downward to move the damper plate toward the closed position. The district court concluded: "[W]hile the components ... may serve some of the same general purposes as the mounting means in element (c), such as

reducing unwanted shifting of the damper plate (flue cover), these features cannot be considered equivalent. These components do not stabilize the damper plate by mounting it to the flue." *Dalsin,* slip op. at 16.

Dalsin did not present affidavit evidence to show the correspondence between the Icebreaker structure and the stem and stem guide structure disclosed in the specification and equivalents thereof. However, photographs of the Icebreaker device and the affidavit of RMR's president raise a genuine issue of material fact as to whether the Icebreaker device includes structure equivalent to the stem and stem guide. The photographs and RMR affidavit show the cable, guide crossbar, and guide holes of the Icebreaker device assisting in resisting rotation of the damper plate while the damper plate is being pulled downward by the cable loops. The guide crossbar and guide holes also resist horizontal movement by the damper plate when it is being pulled downward.

As RMR contends, the cable, guide crossbar, and guide holes of the Icebreaker device probably do not perform the function of mounting the damper plate to the chimney flue when the damper plate is in the open position. However, the mounting means is concerned only with mounting the damper plate in the closed position. The spring means support the damper plate in the open position. The issue as to whether equivalent structure to the stem and stem guide are present in the Icebreaker device is a close one, and we do not decide this issue as a matter of law. *IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1430, 54 USPQ2d 1129, 1134 (Fed.Cir.2000) ("Whether an accused device or method infringes a claim with a § 112, ¶ 6 limitation, i.e., whether it performs the identical function with the same structure, materials, or acts described in the specification or an equivalent thereof, is a question of fact."); *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1268–69, 51 USPQ2d 1225, 1230–31 (Fed.Cir. 1999).

Likewise, there is a genuine issue of material fact as to whether the Universal chimney damper includes equivalent structure to the stem and stem guide. The Universal chimney damper, which was also shown in photographs and described in the RMR president's affidavit, also uses a cable, a guide crossbar, and cable holes that allegedly restricts rotation and horizontal movement of the damper plate.

We of course do not address the correctness of the claim construction of other claim limitations other than the "mounting means" limitation. These issues were not raised in this appeal, and we also express no opinion as to whether an issue of material fact has been raised concerning infringement under these other limitations. Nor do we address the district court's conclusions concerning the period of available damages. *See Dalsin,* slip op. at 17 n.10.

Thus, because we conclude that a reasonable jury could have found infringement under a proper construction of the mounting means limitation of claim 1, we reverse the district court's grant of summary judgment of non-infringement and remand to the district court for further proceedings consistent with this opinion.

## COSTS

No costs.