**SUNTIGER, INC. and Biomedical Optics Company of America, Inc., Plaintiffs–Appellants,**

v.

**SCIENTIFIC RESEARCH FUNDING GROUP, Defendant,**

v.

**BluBlocker Corporation, JS & A Group, Inc., and Joseph Sugarman, Defendants–Appellees.**

**No. 98–1333.**

United States Court of Appeals, Federal Circuit.

Aug. 19, 1999.

Charles W. Shifley, Banner & Witcoff, of Chicago, Illinois, argued for plaintiff appellant. With him on the brief were Pamela I. Banner, Timothy C. Meece, and John F. Rollins.

George H. Gerstman, Gerstman, Ellis, & McMillin, Ltd., of Chicago, Illinois, argued for defendant-appellee. With him on the brief was Terrence W. McMillin. Of coun-

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.

Opinion for the court filed by Circuit Judge PLAGER. Circuit Judge LOURIE dissents.

PLAGER, Circuit Judge.

The United States District Court for the Eastern District of Virginia granted summary judgment of non-infringement of U.S. Patent No. 4,952,046 ("the '046 patent") against SunTiger, Inc. and Biomedical Optics Company of America, Inc. (collectively "SunTiger"), and in favor of BluBlocker Corp., JS & A Group, Inc., and Joseph Sugarman (collectively "BluBlocker"). *See SunTiger, Inc. v. Scientific Research Funding Group*, 9 F.Supp.2d 601 (E.D.Va.1998) (order).[1] SunTiger appeals, arguing that there are genuine issues of material fact in dispute concerning the question of infringement. We agree, and vacate the district court's grant of summary judgment of non-infringement; the case is remanded for further proceedings.

## BACKGROUND

The '046 patent, of which SunTiger is assignee, is directed to optical lenses for sunglasses that screen out certain wavelengths of visible light that may cause harm to human eyes after extended exposure. The lenses covered by the '046 patent incorporate an orange-colored, sharp

1. This appeal, Docket No. 98–1333, initially was consolidated with a related appeal, Docket No. 98–1418, in which Scientific Research Funding Group ("SRFG") appealed from the district court's denial of its motion for judgment as a matter of law ("JMOL") that it did not literally infringe or induce infringement of SunTiger's U.S. Patents Nos. 4,878,748, 5,177,509, and 5,400,175, and that those patents are invalid and unenforceable. Acknowledging that these are in essence two separate appeals because they involve different patents and different issues relating to those patents,

we granted BluBlocker's motion for an enlargement of argument time, *see SunTiger, Inc. v. Scientific Research Funding Group*, Nos. 98–1333, –1418 (Mar. 10, 1999), and at oral argument we heard the appeals separately. We have since unconsolidated the appeals. *See SunTiger, Inc. v. Scientific Research Funding Group*, Nos. 98–1333, –1418 (Apr. 14, 1999); *see also SunTiger, Inc. v. Scientific Research Funding Group*, 1999 WL 379140 (Fed.Cir. May 6, 1999) (Table). We here decide only the issues related to the '046 patent.

cut-on dye that blocks out blue light while allowing other colors of light to be transmitted.

The application for the '046 patent was filed on July 25, 1988 as a continuation-in-part of an application, Ser. No. 352,706 ("the parent application"), that had been filed in 1982. The parent application discloses numerous possible ranges for transmission spectra of orange-dyed lenses for sunglasses. For instance, the written description of the parent application describes cut-offs at 512, 490, 510 and 520 nanometers ("nm"). *See* Joint App. at A150, Prosecution History of Application No. 352,706 at 8. In addition, the parent application provides a description and an illustration of characteristic transmission curves, lines 53, 54, and 55 of Figure 5 (shown below), of some suitable orange dyes. *See id.* at A151–52, Prosecution History at 9–10.

The written description of the '046 patent discloses a more limited range for transmission spectra for dyed lenses, as illustrated in Figure 1 of the patent (shown below).

Limits Of The Transmission Spectra Of The Dyed Lens

**Fig. 1**

Claim 1, the only independent claim of the '046 patent and the only claim at issue, reads:

1. A *lens* worn in front of the eyes by humans, in an outdoor sunlit environment, where said lens is a filter barrier to photons deleterious to the eyes and that is also a transmitter of visible light most useful for high visual acuity, where said lens comprises:

 (a) a transparent, organic plastic matrix material, and

 (b) a sharp cut-on orange dye incorporated into said material that *allows the lens to transmit* at least 90% of the visible sunlight with wavelengths longer than 636 nm and block more than 99% of all sunlight with wavelengths shorter than 515 nm.

(emphasis added). As indicated by the claim language and as shown by Figure 1, the claimed transmission characteristics of the lens are 99% blockage at wavelengths shorter than 515 nm and 90% transmission at wavelengths longer than 636 nm.

SunTiger accused BluBlocker of infringing claim 1 of the '046 patent. Testing by SunTiger indicated that the accused Blu-Blocker lens incorporates an orange-colored, sharp cut-on dye that has the same transmission characteristics as set forth in claim 1, i.e., it blocks 99% of blue light and transmits 90% of other colors of light. However, in addition to the orange dye, the accused lens also incorporates a gray gradient surface coating that reduces the amount of visible light transmitted by the accused lens. The gray coating is darkest at the top of the lens and becomes progressively lighter towards the bottom of the lens. Due to the gray gradient coating, less visible light is transmitted at the top of the accused lens than at the bottom.

Testing of BluBlocker's accused lens also showed that with the gray gradient coating, no part of the accused lens met the transmission limitations of claim 1 except for the "right bottom" portion of the accused lens where the gray gradient coating was lightest and allowed for the transmission of the most visible light. Blu-Blocker does not dispute that evidence was submitted that indicated the "right bottom" of one of its lenses transmits 90% of visible light at 636 nm. *See* BluBlocker Reply Br. at 8, 30.

The only claim language that was disputed at the trial level and remains in dispute is part (b) of claim 1: "a sharp cut-on orange dye incorporated into said mate-

rial that allows the lens to transmit at least 90% of the visible sunlight with wavelengths longer than 636 nm and block more than 99% of all sunlight with wavelengths shorter than 515 nm." The parties proposed differing claim interpretations to the district court. SunTiger proposed that the language should be interpreted to require the specified transmission characteristics to be a "property" of the orange dye in the lens, rather than that of the lens. In other words, according to SunTiger, it is the dye, not the lens, that must have the critical transmission characteristics. In contrast, BluBlocker contended that the language should be interpreted to require the lens, not merely the orange dye, to have the critical transmission characteristics.

Based on a plain reading of the language of the patent itself, the district court agreed with BluBlocker that the claim is to a "specific type of lens that has a specific type of result," rather than to an orange dye with specific limitations. Joint App. at A66–69, Hearing Tr. Feb. 13, 1998 at 18–22 (before Judge Leonie M. Brinkema). Reasoning that the gray coating BluBlocker applies to its accused orange-dyed lens changes the transmission quality of the lens such that it is outside the scope of the asserted claims, the district court granted summary judgment of non-infringement to BluBlocker. *See id.* at A69–70, Tr. at 21–22.

SunTiger appeals from the summary judgment of non-infringement, mainly arguing that the district court erred in construing the transmission limitations of claim 1 to be a property of the lens, rather than a property of the orange dye embedded in the plastic of the lens. SunTiger further asserts that, even under the erroneous claim interpretation, BluBlocker's lens infringes claim 1 because the gray coating on BluBlocker's lens does not remove it from infringement.

In response, BluBlocker argues that SunTiger is collaterally estopped from bringing its current appeal (Docket No. 98–1333) regarding summary judgment of non-infringement because SunTiger previously voluntarily dismissed a related appeal (Docket No. 98–1419) challenging a separate court order[2] in regard to a denial of treble damages and partial attorneys' fees from a separate defendant, SRFG. BluBlocker also responds that the district court properly construed claim 1 of the '046 patent and properly granted summary judgment of non-infringement. Moreover, BluBlocker argues that even if SunTiger could prove that claim 1 reads on the accused lens, there would be no triable issue because the patent is invalid.[3] BluBlocker contends that the '046 patent is not entitled to the 1982 filing date of its parent application because the parent application did not disclose the transmission characteristics claimed in the '046 patent. Since SunTiger admits that there was a post–1982 sale, BluBlocker asserts that the patent is invalid and that the district court improperly denied BluBlocker's motion for summary judgment on invalidity.

## DISCUSSION

### A. Collateral estoppel

Before addressing the merits of SunTiger's appeal from the summary judgment of non-infringement, we first address BluBlocker's assertion that SunTiger is collaterally estopped from bringing the appeal due to SunTiger's voluntary dismissal of its appeal (Docket No. 98–1419) from an April 29, 1998 order. The April 29, 1998 district court order did not address the '046 patent. Instead, it dealt with the

---

**2.** *SunTiger, Inc. v. Scientific Research Funding Group,* 9 F.Supp.2d 601 (E.D.Va.1998) (order).

**3.** *SunTiger, Inc. v. Scientific Research Funding Group,* Nos. 98–1333, –1418, –1419 (Fed.Cir. Sep. 8, 1998) (order) (dismissing BluBlocker's

separate appeal from a district court's order denying its motion for summary judgment of invalidity (Docket No. 98–1442) but allowing BluBlocker to raise its arguments concerning invalidity in its response to SunTiger's appeal from the judgment of non-infringement (Docket Nos. 98–1333, –1418, –1419)).

denial of SRFG's motion for JMOL on the finding of infringement and inducement of infringement of three SunTiger patents, not including the '046 patent. The order also denied treble damages to SunTiger and partially granted attorney fees to SunTiger.

■ In the interest of national uniformity, when considering appeals from a district court in patent cases we apply our own circuit law, except that with respect to purely procedural matters that are subject to local variation, we will customarily follow local law of the circuit in which the district court sits. *See Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 1440, 223 USPQ 1074, 1087 (Fed.Cir.1984) (en banc). With regard to when collateral estoppel applies in a case, the Fourth Circuit, home to the Eastern District of Virginia, has said,

> [c]ollateral estoppel is appropriate where the identical issue was "actually litigated, that is, contested by the parties and submitted for determination by the court," where the issue was "actually and necessarily determined by a court of competent jurisdiction," and where preclusion does not work an unfairness in the second trial.

*Swentek v. USAIR,* 830 F.2d 552, 561 (4th Cir.1987). We agree with the Fourth Circuit's articulation of the test; whether treated as a matter governed by Federal Circuit law, or by Fourth Circuit law, the result is the same.

■ Because none of the conditions for collateral estoppel were met, BluBlocker's contention that SunTiger is collaterally estopped from bringing the current appeal fails. First, collateral estoppel applies to an issue raised in a second trial. *See id.* In the situation before us, no second trial took place. Although multiple appeals were docketed in this court from separate orders issued by Judge Brinkema, the appeals all stemmed from the same action in front of Judge Brinkema involving SunTiger, BluBlocker, and SRFG. BluBlocker's argument also lacks merit because collateral estoppel only applies if the issue litigated in the second trial is identical to an issue litigated in the first trial. *See Swentek,* 830 F.2d at 561. The issues appealed by SunTiger in the dismissed appeal (Docket No. 98–1419) involved three patents, but not the '046 patent. The issues appealed by SunTiger in this appeal (Docket No. 98–1333) only concern the '046 patent. Thus, an identical issue has not been actually litigated in a prior trial. It is clear beyond peradventure that collateral estoppel does not apply to preclude SunTiger from bringing this appeal.

**B. Denial of summary judgment of invalidity**

■■ Next, we address another BluBlocker argument – that the district court erred by denying summary judgment of invalidity of the '046 patent. When a district court *grants* summary judgment, we review without deference to the trial court whether there are disputed material facts, and we review independently whether the prevailing party is entitled to judgment as a matter of law. *See Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). By contrast, when a district court *denies* summary judgment, we review that decision with considerable deference to the court. As Professor Moore explains:

> The trial court has the right to exercise its discretion to deny a motion for summary judgment, even if it determines that a party is entitled to it if in the court's opinion, the case would benefit from a full hearing. The court can perform this "negative discretionary function" and deny summary judgment if policy considerations so warrant; absent a finding of abuse, the court's discretion will not be disturbed.

12 James WM. Moore, Moore's Federal Practice, § 56.41[3][d] (3d ed.1999). We will not disturb the trial court's denial of summary judgment unless we find that the court has indeed abused its discretion in so denying.

■ BluBlocker argues that the district court erred in denying summary judgment that the '046 patent is invalid because of an on-sale bar under 35 U.S.C. § 102(b) (1994). The fact of the sale, and when it occurred, is not at issue. What is at issue is whether the '046 patent is entitled to the filing date of the parent application, a date that preceded the sale. According to Blu-Blocker, the '046 patent is not entitled to the 1982 filing date of its parent application because the parent application did not specify the transmission characteristics claimed in the '046 patent.

■ For a claim in a later-filed application to be entitled to the filing date of an earlier application under 35 U.S.C. § 120 (1994), the earlier application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1 (1994). *See Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1158, 47 USPQ2d 1829, 1832 (Fed.Cir.1998) (citing *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1571, 41 USPQ2d 1961, 1965–66 (Fed.Cir.1997)). The statute expresses the written description requirement as follows:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1. The issue of whether the written description requirement has been satisfied is a question of fact. *See Tronzo,* 156 F.3d at 1158, 47 USPQ2d at 1832.

Before the district court, SunTiger submitted affidavits from its experts that support its claim that the parent application did sufficiently describe the invention claimed in the '046 patent. In response, BluBlocker submitted evidence to rebut those affidavits and argued that although the parent application did disclose a whole host of transmission spectra as exemplified in Figure 5 (*supra*), it did not adequately disclose the particular spectra claimed in the '046 patent – namely, 1% transmission at 515 nm and 90% transmission at 636 nm. Given the conflicting evidence, the district court concluded that there was "an old-fashioned factual dispute" and there was "still clearly an issue that is in genuine dispute." Joint App. at A45, Hearing Tr. Dec. 19, 1997 at 43 (before Judge Leonie M. Brinkema). Accordingly, the district court denied summary judgment on the issue of invalidity. *See SunTiger, Inc. v. Scientific Research Funding Group,* Docket No. 97–423–A (E.D.Va. Dec. 19, 1997) (order).

To disturb this decision by the trial court, we would have to find that the facts were so clear that the denial of summary judgment was an unquestioned abuse of discretion. The record, as recited above, belies any such finding. Because the district court did not abuse its discretion, we decline to disturb the district court's denial of summary judgment.

### C. Grant of summary judgment of non-infringement

■ In reviewing a district court's grant of summary judgment, we must make an independent determination as to whether the standards for summary judgment have been met. *See Conroy,* 14 F.3d at 1575, 29 USPQ2d at 1377; *Vas–Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir.1991); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 673, 15 USPQ2d 1540, 1542–43 (Fed.Cir.1990). We view the evidence in a light most favorable to the non-movant, SunTiger, and draw all reasonable inferences in its favor. *See SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (en banc). A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

■■ An infringement analysis involves two steps. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46

USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc). First is claim construction – the scope and meaning of the patent claims asserted are determined. *See id.* Second is determination of infringement – the properly construed claims are compared to the allegedly infringing product. *See id.* Claim construction is a matter of law, in the first instance for the trial court, and is a matter which we independently review, *see id.,* while infringement is a matter of fact which we review accordingly. *See Insituform Techs., Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 692, 48 USPQ2d 1610, 1614 (Fed.Cir.1998).

 In the case at hand, the district court construed claim 1 of the '046 patent to cover a lens with particular transmission characteristics. *See* Joint App. at A66–69, Hearing Tr. Feb. 13, 1998 at 18–22 (before Judge Leonie M. Brinkema). The district court based its construction on the plain language of the '046 patent itself. *See id.* The district court found it significant that the title of the patent is "Optical *Lenses* with Selective Transmissivity Functions" (emphasis added) and that Figure 1 of the patent describes the limits of the transmission spectra of a dyed *lens.* *See id.* Most importantly, as noted by the district court, claim 1 is drawn to a lens, not to a dye. *See id.* As indicated by the claim language, the dye "allows the lens to transmit" particular wavelengths and block other wavelengths. '046 Patent, col. 6, ll. 18–22. Thus, the language in the patent itself provides strong proof that claim 1 should be construed to cover a lens, not a dye, with particular transmission characteristics.

SunTiger argues that the district court's claim construction is incorrect. SunTiger particularly emphasizes one sentence of the '046 patent to support its interpretation that the claim covers a dye rather than a lens with certain transmission characteristics: "*This dye has the property* of allowing the lens to transmit at least 90% of the visible sunlight with wavelengths longer than 636 nm and block more than 99% of all sunlight with wavelengths short-

er than 515 nm." '046 patent, col. 2., ll. 48–51 (emphasis added). However, that sentence does not contradict the claim construction adopted by the district court since it merely explains how the dye is integral in "allowing the lens to transmit" within specified regions.

Similarly, other language from the patent upon which SunTiger relies also does not contradict the claim construction adopted by the district court. For instance, SunTiger argues that a sentence in the written description shows that the curves in Figure 1 are the transmission spectra of the orange dye. *See* '046 patent, col. 5, ll. 8–23. Although the curves of Figure 1 may indeed represent the transmission spectra of the orange dye, as clearly indicated by the title of Figure 1, "Limits of the Transmission Spectra of the Dyed *Lens,*" (emphasis added), those curves must also represent the transmission spectra of the lens. SunTiger does not offer any convincing argument why the transmission spectra of the lens cannot be the same as that of the dye.

In addition to noting portions of the patent's written description that purportedly support its proposed claim construction, SunTiger also argues that language in the parent application supports its theory that the dye, not the lens, must have the critical transmission properties. This argument is unconvincing because the language in the parent application to which SunTiger points is not included or incorporated in the '046 patent and because the scope of the claims in the parent application are significantly different from those of the '046 patent.

Aside from its arguments based upon the language of the patent itself, SunTiger also contends that extrinsic evidence, a declaration by its expert witness, Dr. Robert F. Cozzens, supports its claim interpretation. Because we agree with the trial court that the language of the patent itself leaves no real doubt regarding the proper claim construction, and because we agree fully with the trial court's conclusion that the claim is to a lens with certain transmis-

sion characteristics, there is no need for, and it would be improper for us to rely upon, the extrinsic evidence offered by SunTiger. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1577 (Fed.Cir.1996).

■ Thus far we conclude that the district court proceeded without error. However, with regard to the second step of the infringement analysis – applying the construed claims to the accused product – we conclude that the district court erred. Reasoning that the gray coating that Blu-Blocker applied to its accused orange-dyed lens changes the transmission characteristics of the lens such that it is outside the scope of the asserted claims, the district court granted summary judgment of non-infringement to BluBlocker. *See* Joint App. at A69–70, Hearing Tr. Feb. 13, 1998 at 21–22 (before Judge Leonie M. Brinkema). This conclusion was reached despite the evidence that the "right bottom" of the accused lens met the claim limitations.

■ The district court was persuaded that the gray coating on the BluBlocker lens changed an inherent property, thereby removing the accused lens from infringement. The district court's error lies in the fact that we have never required that a claim read on the entirety of an accused device in order to infringe. If a claim reads merely on a part of an accused device, that is enough for infringement. As we explained in *Stiftung v. Renishaw PLC,* 945 F.2d 1173, 1178, 20 USPQ2d 1094, 1098 (Fed.Cir.1991):

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write.

(quoting *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703, 218 USPQ 965, 967–68 (Fed.Cir.1983)). *Cf. Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 623, 34 USPQ2d

1816, 1822 (Fed.Cir.1995) (holding that part-time infringement is nonetheless infringement). Any other reasoning would allow an infringer to avoid infringement merely by adding additional elements to an infringing device.

■ The district court seemed to have relied on the reasoning of *Insituform Techs., Inc. v. Cat Contracting, Inc.,* 99 F.3d 1098, 40 USPQ2d 1602 (Fed.Cir. 1996), in reaching its conclusion that Blu-Blocker's addition of a gray coating to its lens avoided infringement because it changed an inherent property of the lens. In *Insituform,* this court stated that in certain instances adding elements may allow a product to avoid infringing a claim. *Id.* at 1106, 40 USPQ2d at 1608. If a claim is specific as to the number of elements and the addition of an element eliminates an inherent feature of the claim, then that additional element will prevent a finding of literal infringement. *Id.* The claim at issue here is not specific as to the number of elements (i.e., dyes). Moreover, there is evidence supporting that the addition of the graduated gray coating does not fully eliminate an inherent feature of the claim (i.e., 1% transmission at 515 nm and 90% transmission at 636 nm). Because *Insituform* is inapposite, the district court's reliance on that case was unjustified.

Furthermore, there is a genuine dispute as to whether the "right bottom" of Blu-Blocker's accused lens exhibits the inherent feature of the claim, which in this case is the transmission characteristics specified in part (b) of the claim. SunTiger submitted evidence to the district court supporting infringement. The expert report of Dr. Cozzens, SunTiger's expert witness, shows that on a part of the Blu-Blocker lens, the "right-bottom", the gray gradient coating is so light that 90% of visible light can be transmitted through that part. *See* Joint App. at 2420 and 2480, Expert Report of Robert F. Cozzens, Ph.D. ¶ 22 and Exhibit C. Thus, although the gray gradient coating, where dark enough, may be able to remove those parts of the accused lens from infringement, as indicated by the Cozzen report, the gray

coating may be thin enough in some places as to allow transmission in the claimed region.

In response, BluBlocker contended that the tests conducted by Dr. Cozzens were improper, and submitted evidence that many people test lenses near their geometric centers. BluBlocker's evidence serves as a rebuttal of the evidence submitted by SunTiger, thus putting at issue whether claim 1 reads upon the "right bottom" of the accused lens. Because the matter of whether the "right bottom" of BluBlocker's lens transmits and blocks in the manner claimed in the '046 patent is a material fact in dispute, the district court's grant of summary judgment of non-infringement in favor of BluBlocker cannot be sustained.

## CONCLUSION

The district court correctly construed claim 1 of the '046 patent. However, because there are genuine issues as to material facts relating to infringement, the district court erred in granting summary judgment of non-infringement in favor of BluBlocker. Accordingly, we vacate the grant of summary judgment of non-infringement and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

## COSTS

The parties shall bear their own costs.

LOURIE, Circuit Judge, dissenting.

I respectfully dissent from the majority's decision to affirm the denial of summary judgment of invalidity and remand for further proceedings. The patent is plainly invalid and remanding for a new trial on infringement is unnecessary.

BluBlocker moved for summary judgment on the ground that the patent was invalid under the on-sale bar of 35 U.S.C. § 102. It claimed that, unless the SunTiger patent is entitled to the benefit of its parent's filing date, the patent is invalid. SunTiger concedes that it needs entitlement to that filing date. That entitlement, in turn, depends on whether Figure 5 of the parent application constitutes a written description of the invention of the claims at issue. Key to those claims are the limitations that the lens transmit "at least 90% of the visible sunlight with wavelengths longer than 636 nm and block more than 99% of all sunlight with wavelengths shorter than 515 nm."

The trial court granted BluBlocker's motion for summary judgment of noninfringement, but denied its motion for summary judgment of invalidity on the ground that there was "an old-fashioned factual dispute." The majority vacates the non-infringement finding and rests its affirmance of the summary judgment denial on the highly deferential standard of review accorded to denials of motions for summary judgment. It remands for a trial on both issues.

I appreciate the force of the majority's adherence to customary procedure in affirming the denial of summary judgment. The rule of deference is a good one, soundly based. However, the rule is not absolute.

There is no genuine issue of material fact relating to the lack of disclosure of the key claim limitations in Figure 5. The majority states that "to disturb this decision by the trial court, we would have to find that the facts were so clear that the denial of summary judgment was an unquestioned abuse of discretion." The facts are so clear. An abuse of discretion includes a decision that is clearly unreasonable, arbitrary, or fanciful; an error of law; or one based on clearly erroneous fact-finding or a lack of evidence on which a court rationally could have based its decision. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876, 20 USPQ2d 1045, 1050 (Fed.Cir.1991). Validity is a question of law, based on facts, among which are, in this case, what the parent patent discloses. Inspection of the Figure 5 graph makes clear beyond any doubt that the 90%–636 nm and 99%–515 nm limitations are simply not there. The case law makes clear that disclosure of a generic expression encompassing a large

number of possible variants is not a description of all of them. *See In re Ruschig,* 379 F.2d 990, 154 USPQ 122 (CCPA 1967); *Fujikawa v. Wattanasin,* 93 F.3d 1559, 39 USPQ2d 1895 (Fed.Cir.1996). While it is regrettable that the district court was not able to see through the "experts" asserting that these limitations were described in the figure, we should not perpetuate the fiction that there is a genuine dispute when we can see that the figure does not disclose the key limitations. This is not an issue concerning which testimony is necessary to explain complex language, or one where the demeanor of witnesses might matter. We can read the patent.

We should vacate the denial of summary judgment and remand to the district court with instructions to enter summary judgment of invalidity in favor of BluBlocker. We should do this on the ground of clearly erroneous fact-finding, *i.e.,* because we have a firm conviction that error was made on a controlling fact leading to an inevitable conclusion on a question of law. The key facts are clear and the patent should have been held invalid rather than sending the case back for trial on infringement and invalidity.