**Stewart LAMLE, Plaintiff–Appellant,**

v.

**MATTEL, INC., Defendant–Appellee.**

No. 02–1359.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 6, 2003.

Before NEWMAN, CLEVENGER, and GAJARSA, Circuit Judges.

PER CURIAM.

Stewart Lamle ("Lamle") appeals the judgment of the United States District Court for the Central District of California, granting summary judgment in favor of Mattel, Inc., on Mr. Lamle's claims for breach of contract, patent infringement, and intentional interference with economic relations. *Lamle v. Mattel, Inc.*, No. 99–CV–10410 (C.D.Cal. Aug. 28, 2001) (order granting summary judgment). Because we can neither discern the grounds on which the district court granted summary judgment nor be certain that there are no genuine disputes of material fact in the case, we *vacate* the district court's grant of summary judgment and *remand* the case to the district court.

**I**

This case arises from a dispute between Lamle and Mattel over a game invented by Lamle called "Farook." Farook, superficially similar to Tic Tac Toe, is played on a four by four grid on which players place, move, and jump pieces ("jewels"), seeking to arrange their pieces in rows, blocks, or corners of the Farook board. Mr. Lamle developed Farook around 1991, and obtained two patents (U.S. Patents No. 5,308,080 and No. 5,419,564) with claims directed to methods of playing Farook.

Mr. Lamle began negotiations with Mattel in early 1997, when he met Michael Bucher, an executive of one of Mattel's international subsidiaries, at the International Toy Fair in Nuremberg, Germany. Mr. Bucher was interested in having Mattel license Farook for certain international markets.[1] Accordingly, Lamle and Mattel signed a "Standstill Agreement" in March 1997, in which Lamle agreed, in exchange for $25,000, to refrain from licensing Farook to any other party until June (later extended to July) of 1997. Over the next several months, both the terms of the proposed license agreement and the physical components of the Farook game were refined in oral, written, and e-mail discussions between Lamle and Mattel.

In August 1997, Mattel "previewed" samples of Farook supplied by Lamle at the Pre–Toy Fair in Scottsdale, Arizona. The Pre–Toy Fair is an annual product show for Mattel's international affiliates and other non-Mattel parties, at which Mattel exhibits potential Mattel products to gauge and generate interest before the International Toy Fair.

Ultimately, Mattel decided not to license Farook. According to Mattel, the reason was a lack of interest from its international affiliates; according to Lamle, it was because Mattel feared competition with its popular Othello game. Mr. Bucher, after alleged difficulty contacting Lamle by e-mail, sent a fax communicating Mattel's lack of interest to Lamle at the office of one of Lamle's business associates, where Lamle was holding a meeting to persuade investors to support Lamle's marketing of Farook in the United States. According to Lamle, Mattel's "repudiation" destroyed any credibility Farook might have held in the eyes of his investors, and resulted in the investors declining to invest in his game.

Acting without an attorney, Lamle filed suit in 1999 against Mattel in the United States District Court for the Central District of California. As ultimately amended, Lamle's complaint asserted three causes of action against Mattel: breach of contract, patent infringement, and intentional interference with economic relations. Following discovery, Mattel filed a motion for summary judgment in July of 2001. Lamle opposed, and sought a continuance of discovery under Rule 56(f). In August 2001, the district court issued an order granting Mattel's motion for summary judgment and entering judgment for Mattel. The court's order stated only the following:

> The Court has considered Defendants' motion for summary judgment, Defendants' *ex parte* application to take a deposition after the discovery cut-off date, and Plaintiff's motion for pretrial scheduling order continuing discovery and other dates, together with the moving and opposing papers.

> It is Ordered that Defendants' motion for summary judgment be, and hereby is, Granted.

Mr. Lamle subsequently filed a motion which, though framed as a Rule 59(e) motion to amend the judgment order, was in effect a motion for reconsideration. Mattel opposed. The district court denied the motion, stating:

> The Court has considered Plaintiff's motion to alter or amend the Court's August 28, 2001, summary judgment order, together with the moving and opposing papers.

> It is Ordered that the motion be, and hereby is, Denied.

Still acting as his own representative, Lamle filed his initial appeal of the district

---

1. Lamle wanted to reserve the American and Japanese markets for himself.

court's judgment with the Court of Appeals for the Ninth Circuit. On March 14, 2002, the Ninth Circuit ordered the appeal transferred to this court. We have jurisdiction over Lamle's appeal pursuant to 28 U.S.C. § 1295(a)(1).

## II

When a district court grants summary judgment, we review without deference to the trial court whether there are disputed material facts, and review independently whether the prevailing party is entitled to judgment as a matter of law. *SunTiger, Inc. v. Scientific Research Funding Group,* 189 F.3d 1327, 1333, 51 USPQ2d 1811, 1814 (Fed.Cir.1999). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Unlike Federal Rule of Civil Procedure 52, Rule 56 does not require a district court to set forth specific findings of fact or conclusions of law when deciding a motion for summary judgment. Nonetheless, in complicated cases, a summary disposition lacking any explanation of the district court's reasoning risks reversal when a reviewing court cannot discern the basis for the district court's decision. *Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1020, 226 USPQ 881, 883 (Fed. Cir.1985). As the Ninth Circuit has explained, such dispositions may pose difficulties to actors within and without the judicial system:

A summary judgment order that fails to disclose the district court's reasons runs contrary to the interest of judicial efficiency by compelling the appellate court to scour the record in order to find evidence in support of the decision. It also increases the danger that litigants, whether they win or lose, will perceive the judicial process to be arbitrary and capricious. Accordingly, this court has held that when multiple grounds are presented by the movant and the reasons for the district court's decision are not otherwise clear from the record, it may vacate a summary judgment and remand for a statement of reasons.

*Couveau v. Am. Airlines, Inc.,* 218 F.3d 1078, 1080 (9th Cir.2000) (internal quotation marks and citation omitted) (citing *Van Bourg, Allen & Roger v. NLRB,* 656 F.2d 1356, 1357 (9th Cir.1981)). We have stated that, Rule 52 notwithstanding, if the district court's underlying holdings are ambiguous or inascertainable, " 'the reasons for entering summary judgment must be stated somewhere in the record.' " *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1526–27, 25 USPQ2d 1196, 1201 (Fed.Cir.1992) (quoting *Van Bourg,* 656 F.2d at 1357). *See also Campbell v. Hewitt, Coleman & Assocs., Inc.,* 21 F.3d 52, 55–56 (4th Cir.1994) (vacating grant of summary judgment where basis for grant could not be determined); *Hanson v. Aetna Life & Cas.,* 625 F.2d 573, 575–76 (5th Cir.1980) (same).

Nonetheless, when the issues are straightforward, and when the record or related opinions of the district court make clear that there is no genuine dispute of material fact, a lack of explanation by the district court will not preclude affirmance. *Cable Elec.,* 770 F.2d at 1020–21, 226 USPQ at 883. However, based on our review of the record on appeal, we cannot reach that conclusion here.

Mattel's motion for summary judgment argued, *inter alia*, that Lamle's contract claim fails because the parties intended to be bound only by a signed writing and that none of the communications between the parties constituted such a writing that would satisfy the Statute of Frauds. On Lamle's infringement claim, Mattel argued that it did not make any commercial offers of sale to its international affiliates at the Scottsdale Pre–Toy Fair, that any offers made would not have been offers "within the United States" as required by 35 U.S.C. § 271(a), and that Mattel's alleged "use" at the Pre–Toy Fair was authorized by Lamle. As far as Lamle's interference with prospective economic advantage claim, Mattel argued that its faxing a letter to Lamle at one of his investor's offices was not a "wrongful act," and that Lamle's investors either were not seriously considering investing in Farook or did not actually see Mattel's fax.

Lamle's response, which included a Points and Authorities memorandum, a Statement of Genuine of Issues of Material Fact, and supporting declarations and exhibits, set forth a number factual and legal contentions which, if true, could preclude summary judgment. For example, on his breach of contract claim, Lamle contended (with supporting citations to California law) that the parties intended for their oral communications to be a binding contract; that various e-mails and other documents, taken together, constituted signed writings satisfying the requirements of the Statute of Frauds; that the alleged contract was in fact a contract between merchants for the sale of goods and met the writing requirements of the Uniform Commercial Code; and that Mattel was estopped from asserting the Statute of Frauds as a defense by reason of Lamle's detrimental reliance on Mattel's oral representations.

On his patent claim, Lamle contended that Mattel's activities at the Pre–Toy Fair gave rise to commercial offers to sell to Mattel's international affiliates; that Mattel's activities in the United States, while allegedly aimed at securing international sales, gave rise to an offer for sale in the United States under section 271(a); and that Mattel's "use" at the Pre–Toy Fair was not in a manner authorized by Lamle.

On his intentional interference with economic advantage claim, Lamle argued that the circumstances of Mattel's "repudiation" fax supported an inference that Mattel intended to discourage Lamle's investors; that the investors did in fact learn of Mattel's "repudiation"; and that the investors had been inclined to invest in Farook before learning of Mattel's "repudiation."

We do not hold that any of the above are actually genuine disputes of material fact that preclude summary judgment. But neither can we confidently conclude that Lamle has presented no evidence that would entitle him to a trial on any of his three articulated theories of relief. While we think some of Lamle's arguments are more meritorious than others, we will not usurp the role of the district court by imposing our own views about which, if any, of Lamle's claims necessitate further factual development or a trial on the merits.

## CONCLUSION

We vacate the grant of summary judgment to Mattel, and remand the case to the district court for further proceedings. The district court may on remand either reconsider or maintain its prior rulings on discovery or other procedural matters.