**FAROUDJA LABORATORIES, INC., et al., Plaintiffs,**

v.

**DWIN ELECTRONICS, INC., Defendant.**

**Dwin Electronics, Inc., Counterclaim Plaintiff,**

v.

**Faroudja Laboratories, Inc. et al., Counterclaim Defendants.**

**No. Civ. 97–20010SW.**

United States District Court, N.D. California.

Feb. 9, 2000.

Scott D. Baker, Adaline J. Hilgard, Crosby Heafey Roach & May, San Francisco, CA, for General Instrument Corp.

Joseph F. Jennings, Stephen C. Jensen, Knobbe Martens Olson & Bear LLP, Newport Beach, CA, for Farouda Laboratories, Inc.

James J. Elacqua, Daniel R. Hansen, Brobeck Phleger & Harrison, Palo Alto, CA, Edward R. Schwartz, Wesley W. Monroe, Christie Parker & hale LLP, Irvine, CA, Todd B. Serota, Brian W. Kasell, Troop Steuber Pasich Reddick & Tobbey LLP, Los Angeles, CA, for Dwin Electronics, Inc.

## ORDER GRANTING IN PART AND DENYING IN PART DWIN'S MOTION FOR SUMMARY JUDGMENT ON NON–INFRINGEMENT

SPENCER WILLIAMS, District Judge.

Plaintiffs Faroudja Laboratories, Inc. and General Instrument Corporation (collectively referred to as "Faroudja") initially brought this action against Defendant Dwin Electronics, Inc. ("Dwin") for infringement of its U.S. Patent No. 4,876,596 ("'596 patent" or "'596"). After Dwin filed a motion for summary judgment of noninfringement, Faroudja amended its complaint to add a charge of infringement of its U.S. Patent No. 4,998,287 ("'287 patent" or "'287"). The Court granted Dwin's motion for summary judgment of noninfringement of the '596 patent. *See* Order Granting Dwin's Motion for Summary Judgment of Noninfringement, filed February 24, 1999. Dwin now moves for summary judgment that its LD2 (Rev.B), LD5, LD10 and TranScanner products (collectively referred to as "Line Doublers") do not infringe any of the '287 patent claims.[1] Faroudja opposes Dwin's motion. Upon consideration of the briefs[2] and oral arguments of the parties, and for the reasons set forth below, the Court GRANTS in part and DENIES in part Dwin's motion.

## I. BACKGROUND

### A. Relevant Technology

Commercial motion picture film, which is filmed at 24 frames per second, can be

---

1. Dwin has noticed a separate motion for summary judgment as to its other Line Doubler, the LD2 (rev.A), for March 29, 2000.

2. Although the parties previously briefed Dwin's motion for summary judgment on noninfringement, the Court requested supplemental briefing in accordance with the Claim Construction Order issued on November 8, 1999. *See* Order Requesting Supplemental Briefing, filed November 18, 1999.

converted to video, which is displayed at 60 fields per second, using one technique known as the 3:2 pulldown method. 3:2 pulldown is the most commonly used conversion method in the United States and involves a process whereby a single film frame is scanned to create a resulting signal comprised of two or three video fields. Each video field contains half the lines of each film frame which are alternately designated as "even" or "odd" fields. For instance, when film frame 1 is scanned using the 3:2 pull down method, three video fields are created: fields 1 and 3 will represent the "even" lines of film frame 1, whereas field 2 will represent the "odd" lines. When film frame 2 is scanned, only two video fields are created: field 4 will represent the "odd" lines of film frame 2, while field 5 will represent the "even" lines.

The conversion of film to video does not result in an even distribution of film frames to video field even/odd pairs. For conventional viewing, this does not matter because the even and odd video fields are displayed on a standard television screen in an alternating even/odd format known as "interlacing." However, when interlacing is removed and both even and odd lines are displayed sequentially in a "progressive scan" format using a "line doubler" device, the resulting scene can contain unpleasant "motion artifacts" because video lines from different film frames can end up displayed together.

## B. The '287 Patent

Faroudja's '287 patent is entitled "Determination of Sequential Positions of Video Fields Derived From Film". The '287 patent discloses a system which seeks to eliminate motion artifacts and improve picture quality.

The '287 patent discloses storing alternating odd and even video fields and recombining them into a single progressive scan video scene containing both the odd and even lines. To improve the image quality, the '287 patent describes a means of comparing the video fields to determine if the fields are derived from the same film frame. '287 discloses a field comparator to measure the differences between the compared video fields. If the compared fields are from the same film frame, the measured difference between the fields will be smaller than a predetermined threshold value. For video fields that were derived from film, identical fields will exist at certain predetermined positions in the field sequence. By comparing the field comparison results with this predetermined sequence, a determination of whether the video signal was derived from a film source can be made.

The '287 patent also discloses a system that synchronizes these video fields to the film source frames. For a video source that was derived from film, the patented invention enters "film mode" and triggers a switching circuit that recombines odd and even video fields in an improved manner into a single progressive scan video. Through the comparisons made by the patented system, video fields derived from different film frames are not displayed together which eliminates the unpleasant motion artifacts. The patented system continues to compare and recombine video fields until the device no longer detects that the video signal was derived from a film source. The system then reverts into "video mode" until film is again detected.

Claims 1–5 of the '287 patent are at issue in this case. Each of these claims is expressed in "means-plus-function" form pursuant to 35 U.S.C. § 112, ¶ 6.

## C. The Accused Devices

In this action, Faroudja alleges that Dwin infringes the '287 patent through the manufacture, use, offer for sale, and sale of various products referred to as Dwin's Line Doublers. The accused devices are used to process television signals for display on big screen television systems. Dwin contends that its Line Doublers do not infringe the '287 patent claims because its products do not contain the following elements:

means for comparing each received video field with a video field that has been delayed by the duration of said given number of video fields, as required in claims 1–3 and 5;

means for inserting indications of sequential video field position in the received video fields, as required in claim 2;

means for timing said comparisons of said compared results with the predetermined sequence of providing an indication that the video fields were not so derived from film when a determination that identical fields are located in only said predetermined positions in a sequence of the compared received video fields, as required in claim 3; and

means for determining whether the received video signal was derived from film frames when the video fields were produced in accordance with a repetitive sequentially varying relationship to the film frames, as required in claim 4.

## II. LEGAL STANDARD

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed.Cir.1994) (citations omitted). A party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate that no genuine issue of material fact exists for trial. *See id.* at 322, 106 S.Ct. 2548. However, the moving party is not required to *negate* those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. *See id.*

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. The nonmoving party must "make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

The adjudication of a summary judgment motion is not a "trial on affidavits." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Credibility determinations and weighing of the evidence are solely jury functions. *See id.* at 255, 106 S.Ct. 2505. Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

However, there may be no genuine issue of material fact if "the evidence is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. In some circumstances the factual context may render the nonmoving party's claim implausible, and the nonmoving party must come forward with "more persuasive evidence" to support the claim "than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. DISCUSSION

■ Faroudja asserts that Dwin's *Line Doublers* infringe claims 1–5 of its '287 patent both literally and under the doctrine of equivalents. Dwin argues that its products do not infringe literally or under the doctrine of equivalents because several elements of the '287 claims are not present in the accused products. If any element of the patented claim is missing from the accused Dwin Line Doublers, there can be no infringement, either literal or under the doctrine of equivalents. This stringent standard is referred to as the "all elements" rule. *See Pennwalt Corp. v. Du-*

*rand–Wayland, Inc.,* 833 F.2d 931, 935–36 (Fed.Cir.1987).

Determining patent infringement requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Nike Inc.,* 43 F.3d at 646 (*quoting Carroll Touch, Inc. v. Electro Mechanical Systems,* 15 F.3d 1573, 1576 (Fed.Cir.1993)). The comparison should not be between the accused device and the patent owner's commercial embodiment. *See Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1247–48 (Fed.Cir.1998). Having interpreted the '287 claims in its November 8, 1999 Claim Construction Order ("Order"), the Court must now determine whether the claims as construed are present in the accused Dwin Line Doublers.

## A. Claim 1

Claim 1 of the '287 patent discloses a system for determining the sequential position of video fields of a received video signal that was derived from a film having successive image frames, with the video fields having been produced at a greater rate than the film frame rate and in a predetermined repetitive sequentially varying relationship to the film frames. At predetermined positions in the video field sequence, a video field is identical to the video field that preceded it by the duration of a given number of video fields. *See* '287 at 8:1–9. Dwin argues that claim 1 is not infringed literally or under the doctrine of equivalents because elements [b] and [c] are not found in the accused devices.

### 1. Comparing Means

### a. Literal noninfringement

■ For a means-plus-function limitation to read literally on an accused device, the accused device must employ means identical to or the equivalent of the structures, material, or acts described in the patent specification. *See WMS Gaming,*

*Inc. v. International Game Tech.,* 184 F.3d 1339, 1347 (Fed.Cir.1999). Furthermore, the accused device must perform the identical function as specified in the claims. *See Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1042 (Fed.Cir.1993). Therefore, to literally infringe. the "comparing means" element of claim 1,[3] Dwin's Line Doublers must (1) perform the identical *function* of the "comparing means," which the Court identified as comparing each received video field with a video field that has been delayed by the duration of said given number of video fields, and (2) perform those functions using the same or equivalent *structure,* identified by the Order as the field comparator in Figure 3 of the '287 patent.

Dwin argues that its Line Doublers do not have a "comparing means" because its devices do not compare a received video field with a video field that has been delayed by the duration of *two* video fields. Dwin contends that since the only type of video sequence that meets the language of claim 1 and is relevant to the Dwin Line Doublers is a 3:2 pulldown sequence, generic claim terms such as "given number of video fields" may be more specifically stated as "two video fields" for purposes of this summary judgment motion. *See* Dwin's Supplemental Memorandum in Support of its Motion for Summary Judgment ("Dwin's Supp.Mem."), filed on December 15, 1999, at 6:4–7. Therefore, Dwin argues that its devices do not perform the claimed function.

■ Faroudja, however, contends that the accused devices perform the claimed function by comparing adjacent video fields which is comparing each received video field with a video field delayed by the given number "one." Faroudja disputes that the term "given number of video fields" is limited to two video fields. The Court agrees with Faroudja that the 3:2 pulldown method is only one example of a repetitive sequentially varying relationship that meets the limitations of the

3. Claims 2, 3, and 5 each contain an identical "comparing means" element.

patented claims. *See* Order at 14 & n. 3. Infringement analysis requires a court to compare the accused device to the patent claims, not to specific examples or embodiments. *See Renishaw,* 158 F.3d at 1247–48. Therefore, the term "given number of video fields" is not limited to "two" since the patented claims themselves are not limited to the 3:2 pulldown context in which comparisons are made between video fields two fields apart. *See* Order at 15:12–19. Consequently, literal infringement exists if Dwin's devices compare a received video field with a video field that has been delayed by *any* given number of video fields.

■ The Court finds, however, that Faroudja's argument that the Dwin Line Doublers compare adjacent video fields is inaccurate. Although the accused devices utilize information from adjacent video fields to perform its comparisons, they do not actually compare adjacent fields as Faroudja suggests. Rather, the Dwin Line Doublers perform comparisons between a received video field and a "hypothetical" video field which is the average pixel value of the adjacent video field. For example, in the Dwin line doublers, the value of pixel "a" in the first, odd field, is compared to the average of pixel "d" (the pixel located directly above pixel "a") and pixel "g" (the pixel located directly below pixel "a") in the adjacent even field. *See* Bagjian Original Declaration ("Bagjian Orig. Decl.") ¶ 31; Heller Original Declaration ("Heller Orig. Decl.") ¶ 13. The accused devices do not literally compare adjacent video fields, nor do they literally compare received video fields with a video field delayed by any given number of video fields. Therefore, the "comparing means" limitation of claim 1 is not literally met in the accused devices.

### b. Noninfringement Under the Doctrine of Equivalents

■ Under the doctrine of equivalents, an accused product that differs from the claim, and thus does not literally infringe, nonetheless infringes if its difference from that claim is insubstantial from the perspective of one of ordinary skill in the relevant art. However, "the doctrine of equivalents is not a license to ignore or erase structural and functional limitations of the claim, limitations on which the public is entitled to rely in avoiding infringement." *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.,* 73 F.3d 1573, 1582 (Fed.Cir.1996) (internal quotations and citations omitted); *see also Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935 (Fed.Cir.1987) ("a court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement"). To prevail under the doctrine of equivalents, a patent owner must show that each limitation of a claim is met by its substantial equivalent in the accused product. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). A means-plus-function claim is infringed equivalently if the accused device performs substantially the same function in a similar way to achieve a similar result. *See Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267 (Fed.Cir.1999). In this respect, an accused device which does not literally infringe under 35 U.S.C. § 112, ¶ 6 may nonetheless infringe under the doctrine of equivalents because the equivalents doctrine only requires that the accused device perform substantially the same function, not the identical function, as the patented claims. *See Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1320–21 (Fed.Cir.1999).

■ Although the accused devices do not perform the identical function of the '287 "comparing means," Faroudja has offered evidence that the Dwin Line Doublers perform a substantially similar function in a substantially similar way. Citing to the declaration of its expert, Jerrod A. Heller, Faroudja contends that Dwin's averaging process serves to match the even/odd orientation of the compared fields in order to determine whether these fields

are identical. *See* Heller Orig. Decl. ¶ 13. The averaged, or "hypothetical," video field serves as a prediction of a video field which has been delayed by a given number—two, in the context of 3:2 pulldown[4]—of video fields. Faroudja argues that comparing a received video field with an adjacent field that has been averaged to spatially align the fields in the same even/odd orientation is the equivalent of comparing a received video field with a video field that has been delayed by two fields, which falls within the '287 claim. Therefore, a reasonable fact-finder could determine that there is no substantial difference between Dwin's comparing function and the claimed function.

Moreover, Faroudja offers evidence that the Dwin Line Doublers utilize structure that is equivalent to the structure disclosed for performing the "comparing means." Faroudja identifies an arithmetic processor, counters, a threshold detector, a subtractor, an accumulator, a microprocessor, a differential amplifier, an analog to digital converter, and analog circuitry, in the Dwin Line Doublers as the infringing structures. Faroudja contends that the only difference between the field comparator structure of the '287 patent and the accused devices is that a microprocessor provides the threshold in Dwin's devices instead of discrete logic. *See* Faroudja's Supplemental Memorandum in Opposition to Dwin's Motion for Summary Judgment ("Faroudja's Supp.Opp."), filed December 29, 1999, at 9:24–26. Faroudja maintains that both '287 and the accused devices obtain the differences between two video fields by subtracting one input from the other and outputing a signal that represents the difference, and accumulate the total differences between a series of compared fields.

Dwin argues that its devices perform its function in a substantially different way than the '287 structure and produce fundamentally different results. For example, the output/result of the comparisons per-

formed by the Dwin structure is a number within a large range whereas the output/result of the '287 structure is a logical "0," indicating no difference, or "1", indicating a difference. *See* Dwin's Supp. Mem. at 8:16–19.

Because Faroudja has submitted evidence including the declaration of Jerrold A. Heller on which a finder of fact could find that the claimed element and the accused structure are substantially similar, it is in the interests of justice to DENY the motion for summary judgment of noninfringement under the doctrine of equivalents as to this claim element.

### 2. Second Comparing Means

Claim 1, element [c] of the '287 patent discloses a "second comparing means" whose function, as construed in the Order, is:

> comparing the results of a successive number of video field comparisons to determine whether the results are consistent with the sequence that would be expected in a video signal derived from film, wherein the expected sequence has identical fields in only certain predetermined positions.

Order at 9. Dwin contends that its products do not perform this claimed function because its Line Doublers do not determine whether the results of its video field comparisons are consistent with the sequence "0, 0, 1, 0, 1, 0, 0, 1, 0, 1" that would be expected in a video signal derived from film using the 3:2 pulldown method. *See* Dwin's Supp.Mem. at 9:20–22. To the extent that Dwin seeks to limit the scope of the '287 claims to cover only the 3:2 pulldown context, Dwin's efforts must be rejected. Whether Dwin infringes the '287 patent depends on whether the accused devices perform the claimed function which includes, but is not limited to, the 3:2 pulldown method. *See Renishaw*, 158 F.3d at 1247–48.

---

4. In the context of 3:2 pulldown, comparing video fields which have been delayed by "two" results in a comparison of video fields that are of the same even/odd orientation.

Dwin also argues that "the Dwin Line Doublers do not determine whether the results of the comparison are consistent with this sequence ["0, 0, 1, 0, 1, 0, 0, 1, 0, 1"], but rather only determine whether the results of the comparison are consistent with a *fragment of the sequence, namely, 0, 1, 0.*" Dwin's Supp.Mem. at 9:24–26 (emphasis added). Dwin's argument that there is no infringement because its devices use only three video field comparisons to determine whether the results are consistent with the expected sequence is unpersuasive. The claim language does not contain such a limitation and does not require that a specific number of comparisons be made. Faroudja has presented evidence that comparing the results with an expected "0, 1, 0" pattern as performed by the Dwin devices is the same as or at least equivalent to performing the claimed function.

Dwin also contends that its devices do not infringe literally or equivalently because its devices do not compare its results with a sequence that is expected to have identical fields at only certain predetermined positions. To illustrate, Dwin states:

> It is undisputed that the sequence that would be expected out of the Dwin comparator for a 2:2 pulldown video signal is 0,1,0,1,0,1,0,1,0,1 and that a 2:2 pulldown video signal does not produce a sequence that is expected to have identical fields at only certain predetermined positions. Yet, the Dwin Line Doublers will find 0,1,0 sequences in the 2:2 pulldown sequence.... Thus, contrary to the claimed function for claim 1, element [c], the Dwin Line Doublers determine whether the results are consistent with a sequence that would be expected in a video signal derived from film, wherein the expected sequence *never* has identical fields in only certain predetermined positions.

Dwin's Supp.Mem. at 10:1–10. Even if the accused devices do not perform the claimed function when film has been converted to video using 2:2 pulldown, the accused devices nonetheless appear to perform the claimed function when film has been converted using 3:2 pulldown. "An accused produce that sometimes, but not always, embodies a claimed method nonetheless infringes." *Bell Comm. Research, Inc. v. Vitalink Comm. Corp.,* 55 F.3d 615, 622–23 (Fed.Cir.1995).

Moreover, Faroudja has presented evidence that the accused devices employ an equivalent structure to that disclosed by the Court. The Court identified a logic circuit which includes n-bit shift register and AND gate as shown in Figure 2 of the '287 patent (elements 24 and 25) as the structure necessary to perform the claimed function. Faroudja argues that the Dwin Line Doublers use a microprocessor to perform the analysis of field comparisons which is the structural equivalent of the logic circuit disclosed in '287.

Because Faroudja has presented evidence that the Dwin devices perform the same or equivalent function of claim 1, element [c]'s "comparing means," and utilize identical or equivalent structure to perform this claimed function, the Court DENIES Dwin's motion for summary judgment as to this particular claim element.

## B. Claim 2

Claim 2 reads:

> A system for processing a received video signal that was derived from film to indicate the sequential position of video fields in a video signal that was derived from a film having successive image frames, with the video fields having been produced at a greater rate than the film frame rate and in a predetermined repetitive sequentially varying relationship to the film frames wherein at predetermined positions in the sequence a video field is identical to the video field that preceded it by the duration of a given number of video fields ...

'287 at 8:21–30. In short, claim 2 discloses a system for "processing" the received video fields. Claim 2 contains all the limita-

tions, or means-plus-function elements, of claim 1, and an additional "inserting means." In order for Dwin to infringe claim 2, the accused device must contain all four means-plus-function elements. Dwin argues that its devices do not infringe claim 2 of the '287 patent because element [c], the "inserting means," is not present in its Line Doublers.

### 1. Inserting Means

'287's "inserting means" performs the function of inserting indications of the sequential video field position in the received "video signal." Order at 10. The "indications" which are inserted directly into the video fields then serve to "trigger" or synchronize the appropriate circuitry which is responsible for combining the video fields into a single progressive scan.

 Although the term "inserting" was not disputed by the parties during claim construction, determining what the claim terms mean is always a question of law for the Court to decide. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977–79 (Fed.Cir.1995). In doing so, a court is guided by general principles of claim construction and begins with the word's ordinary meaning. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed.Cir.1996). A claim term must be given its ordinary meaning unless the patentee has explicitly redefined the term, or the term itself is so ambiguous it is incapable of being understood without reference to the specification. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 990 (Fed.Cir.1999). "A court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms". *Id.* at 991. For purposes of convenience, the Court refers to "inserting" in its root form, "insert," which means "to put or set in," "to introduce or cause to be introduced into the body of something" or "to attach." Webster's New Collegiate Dictionary (1980) at 689. There is nothing in the '287 patent to suggest that the term "insert" is incapable of being understood on its own,

or that its usage within the scope of '287 is inconsistent with its ordinary meaning. Therefore, the Court adopts the ordinary definition of "insert" to determine whether the claimed "inserting" function is met in the accused devices.

 Dwin argues that its devices do not insert anything into the received video signal to trigger the recombination of video fields and thus, cannot infringe claim 2 of the '287 patent either literally or equivalently. *See* Bagjian Supplemental Declaration ("Bagjian Supp.Decl.") ¶ 9. Faroudja states that the Dwin Line Doublers use a numerical sequence to indicate the positions of video fields which is the logical equivalent of '287's "indications of sequential video field position." Even so, there is no evidence that the accused devices *insert* a numerical sequence, or any other indications of sequential video field position, into the received video signal as claim 2 of the '287 patent requires. Instead, the Dwin devices send data about the video field positions directly to the appropriate "recombining" circuity using a separate line without introducing such data into the fields themselves. Even if the result is the same—the circuitry is triggered and the video fields are recombined to form a progressive scan video—the claimed function is not found in the accused device. There is no evidence that the Dwin Line Doublers function to insert any indication, numerical sequence, or signal conveying data regarding the field positions into the video fields.

Although equivalence is a factual matter normally reserved for a fact-finder, a court should grant summary judgment in any case where no reasonable fact-finder could find equivalence. *See Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997). The claimed function of "inserting" requires the Dwin devices to introduce, set in, or attach some type of signal or data into the video fields, none of which the Dwin Line Doublers do. A finding of infringement, even under the doctrine of equivalents, is precluded when the

accused device does not perform the same or a substantially similar function as the claim element. *See Phonometrics, Inc. v. Northern Telecom Inc.,* 133 F.3d 1459, 1467 (Fed.Cir.1998) (where one of the functions claimed is completely absent from the accused devices, there can be no equivalent infringement).

Moreover, the Dwin devices do not utilize equivalent structure to the VBI inserter, which the Court identified as the structure necessary to perform the claimed function. The Dwin Line Doublers use a separate line to route the numerical sequence indicating video field position to the switching circuitry which combines the fields into progressive scan video. In other words, the Dwin devices send data directly to the "combining" circuitry using a separate line which does not affect the video fields themselves. There is no evidence that using such a line which does not implant data into the video fields is the structural equivalent of a VBI inserter which does.

In order for Dwin to infringe claim 2, the accused devices must contain elements identical or equivalent to each and every claimed element. *See Hilton Davis,* 520 U.S. at 38 n. 8, 117 S.Ct. 1040. An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied. *See Pennwalt Corp.,* 833 F.2d at 934–35. Because the "inserting means" is not met in the accused device either literally or under the doctrine of equivalents, Dwin does not infringe claim 2 of the '287 patent.

## C. Claim 3

■ Claim 3 discloses a system for determining whether a received video signal was derived from film. Claim 3 reads:

A system for determining whether a received video signal having video fields was derived from a film having successive image frames, with the video fields having been produced at a greater rate than the film frame rate and in a predetermined repetitive sequentially varying relationship to the film frames wherein at predetermined positions in the sequence a video field is identical to the video field that preceded it by the duration of a given number of video fields . . .

'287 at 8:48–56. Claim 3 contains the three means-plus-function elements recited in claim 1 and an additional "timing means." In order for Dwin to infringe claim 3, all four elements must be present in the accused devices either literally or equivalently.

### 1. Timing Means

The "timing means" of claim 3 has two functions: (1) timing said comparisons of said compared results with the predetermined sequence, or a "timing function," *and* (2) providing an indication that the received video fields were not so derived from film when a determination that identical fields are located in only said predetermined positions in a sequence of the compared received video fields is not made within a predetermined time, or a "providing function." *See* Order at 10. Dwin argues that the claimed functions of the "timing means" are completely absent from its Line Doublers. Dwin states that its devices do not determine whether the received video fields were derived from film and instead determine whether the received video fields were derived from any progressive scan source. Because the accused devices do not detect "film," Dwin argues that its devices do not provide an indication that the received fields are not derived from film. *See* Dwin's Supp.Mem. at 13:8–15. Dwin also argues that "the Dwin line doublers do not have the same structure as disclosed in the '287 patent or even any structure to compare to the '287 structure for equivalence." Dwin's Supp. Mem. at 13:25–27.

Faroudja disagrees that the Dwin Line Doublers do not perform the claimed "timing function" and state that "[o]nce in film mode, the Dwin devices look for the 0,1,0 sequence until it has not been found for a predetermined period of time." Faroudja's Supp.Opp. at 24:19–21. The comments

to the Line Doubler's programming software indicate that the devices "check for no motion for a long time." Faroudja's Supp.Opp., Exh. 17, p. 5; Heller Supp. Decl. ¶ 31. The inability to locate the "0,1,0" sequence within the requisite time period is the indication of non-film. Faroudja also offers evidence that the programmed microprocessor used by the accused devices is a structural equivalent of the counter and logic gate disclosed by the '287 patent for performing this function. *See* Heller Supp.Decl. ¶ 31.

Given the conflicting evidence in the record, the Court is not prepared to find noninfringement, either literally or equivalently, as a matter of law. Accordingly, Dwin's motion for summary judgment of non-infringement on this claim element is DENIED.

### D. Claim 4

Claim 4 is a system for providing a progressive scan video display signal from a received video signal that may or may not have been derived from film.

#### 1. Determining Means

Claim 4, element [a] discloses a "determining means," whose function is:

> determining whether the received video signal was derived from a film having successive image frames by producing odd and even video fields from each film frame, with the video fields being produced at a greater rate than the film frame rate and in a repetitive sequentially varying relationship to the film frames.

Order at 11. The structure necessary to perform this claimed function is:

> the "comparing means" disclosed in Claim 1, element [b], coupled to a logic circuit which includes n-bit shift register (24), first AND gate (25), counter (29), second AND gate (30), and third AND gate (31), as interconnected in Figure 2.

Order at 11. Dwin argues that its devices do not perform the claimed function because its Line Doublers do not determine whether a received video signal was derived from film frames. In other words, Dwin argues that its devices determine whether a received video signal was derived from any progressive source, which includes, but is not limited to, film. Dwin states that its Line Doublers cannot differentiate between film based progressive sources and non-film based progressive sources.

Faroudja, however, has presented evidence that the Dwin devices differentiate between film based and non-film based progressive sources and thus, perform the claimed function. Faroudja's expert, Jerrold A. Heller, states that the Dwin devices determine whether the source material is film, and not just any progressive source, when the video fields are produced in accordance with a repetitive sequentially varying relationship to the film frames. *See* Heller Orig.Decl. ¶¶ 14–16; Heller Supp.Decl. ¶ 32. Performing the claimed function at least some of the time, if not all of the time, does not avoid infringement. *See Bell Comm.*, 55 F.3d at 622–23. Moreover, even assuming that the Dwin devices detect other progressive sources in addition to film sources, Dwin's motion for summary judgment cannot be granted. The fact that an accused device does more than the claimed function does not negate the fact that it performs the claimed function. "[O]ne cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device." *Suntiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1336 (Fed. Cir.1999). At a minimum, the conflicting declarations of Dwin's expert and Faroudja's expert create a genuine issue of material fact which precludes a finding of non-infringement at the summary judgment stage.

Faroudja also offers evidence that the Dwin devices utilize structure that is equivalent to the structure identified by the Court for this claim element. In addition, Faroudja presents evidence that the Dwin devices meet this claim limitation at

least equivalently by performing substantially the same function in the same way to achieve the same result. Therefore, Dwin's motion for summary judgment of literal infringement and infringement under the doctrine of equivalents as to this means-plus-function element is DENIED.

### 2. Responsive Means

Element [c] of claim 4 discloses a:

means responsive to a determination that the received video signal was so derived from film, for combining the received and delayed video fields to provide a progressive-scan video frame signal at the video field rate, in which alternate lines are derived respectively from odd and even video fields . . .

'287 at 9:19–24. The Court identified the structure disclosed in '287 as a switching circuit, memory, and switch control logic circuity. *See* Order at 11. The switching circuit alternatively selects horizontal lines from odd and even lines, and the switch control logic circuit controls the selection of the horizontal lines from the odd and even video fields for output. Together, this structure alternatively interlaces consecutive stored lines of odd and even video fields to create a single progressive video field containing both the odd and even video fields.

Dwin argues that its devices do not contain the same or equivalent structure for performing the claimed function of the "responsive means" and identifies an "adder," which averages two sets of two video fields where there is a transition between film frames, as the corresponding structure. Dwin contends that its devices blend together four received video fields to produce a new field that reduces motion artifacts whereas the '287 patent reuses and duplicates a received field.

Faroudja, however, identifies a switching circuit controlled by a microprocessor in conjunction with memory as the infringing structure in the Dwin devices. *See* Heller Supp.Decl. ¶¶ 27–30 (a switching circuit in the LD–2 Rev. B and LD–5 products, and a digital switching circuit in the LD–10 and Transcanner products). Faroudja states that like the switching circuit in the '287 patent, Dwin's switching circuit alternatively selects lines from odd and even video fields for output as a progressive scan video frame. *See* Heller Supp.Decl. ¶¶ 27–20. Faroudja also states that like the switch control logic circuit in the '287 patent, Dwin's microprocessor controls the selection of lines from odd and even video fields stored in memory to create a single progressive scan video. Faroudja argues that the Dwin devices therefore use a structural equivalent to the structure disclosed in the '287 patent for performing the claimed function. Faroudja states that the existence of the additional "adder" structure in the Dwin devices, which performs the function of averaging video fields, is irrelevant because Dwin "cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device." *Suntiger*, 189 F.3d at 1336.

Based on the evidence presented, Dwin's motion for summary judgment of literal and equivalent noninfringement must be DENIED as to this claim element.

### V. CONCLUSION

In sum, the Court's Order is summarized as follows:

(a) *Claim 1:*

Consistent with the Court's finding that the "comparing means" (claim 1, element [b]) is not met literally in the accused devices, Dwin's motion for summary judgment is GRANTED as to literal infringement, but DENIED as to infringement under the doctrine of equivalents.

(b) *Claim 2:*

Consistent with the Court's finding that the "inserting means" (claim 2, element [d]) is not met literally or equivalently in the accused devices, Dwin's motion for summary judgment of no literal or doctrine of equivalents infringement is GRANTED.

(c) *Claim 3:*

Consistent with the Court's finding that the "comparing means" is not met literally in the accused devices, Dwin's motion for summary judgment is GRANTED as to literal infringement, but DENIED as to infringement under the doctrine of equivalents.

(d) *Claim 4:*

Dwin's motion for summary judgment is DENIED as to literal infringement and infringement under the doctrine of equivalents.

(e) *Claim 5:*

Consistent with the Court's finding that the "comparing means" is not met literally in the accused devices, Dwin's motion for summary judgment is GRANTED as to literal infringement, but DENIED as to infringement under the doctrine of equivalents.

IT IS SO ORDERED.